*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 10a0112p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
                              *Plaintiff-Appellee,*

                                                              No. 09-1003

        *v.*

SERGIO TRISTAN-MADRIGAL,
                              *Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 08-00141-001—Janet T. Neff, District Judge.

Argued: March 10, 2010

Decided and Filed: April 20, 2010

Before: MARTIN, SILER, and MOORE, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Paul L. Nelson, FEDERAL PUBLIC DEFENDER'S OFFICE, Grand Rapids, Michigan, for Appellant. R. Clay Stiffler, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Sean R. Tilton, FEDERAL PUBLIC DEFENDER'S OFFICE, Grand Rapids, Michigan, for Appellant. John F. Salan, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

_____

**OPINION**

_____

KAREN NELSON MOORE, Circuit Judge. Defendant Sergio Tristan-Madrigal appeals the district court's imposition of a thirty-six month, above-Guidelines sentence as substantively unreasonable. Tristan-Madrigal argues that the district court's upward variance overemphasized his criminal history and that no information in the record supported a variance of the magnitude that the district court imposed. He additionally contends that the district court provided unreasonable weight to his need for rehabilitation because it

1

believed that Tristan-Madrigal would benefit from custodial drug-abuse treatment and vocational training for which he, as a non-English-proficient non-citizen, is actually ineligible. We conclude that the district court did not abuse its discretion in relying on Tristan-Madrigal's criminal history. Moreover, although we express sincere reservations about the propriety of a district court's reliance on a non-English-proficient non-citizen's need for custodial drug-abuse treatment and vocational training when it is unlikely that the individual will be eligible for such programming, we cannot conclude, on the record before us, that the district court abused its discretion in sentencing Tristan-Madrigal. We **AFFIRM** Tristan-Madrigal's sentence.

## I. BACKGROUND AND PROCEDURAL HISTORY

Tristan-Madrigal is a native and citizen of Mexico who has lived and worked in the United States since 1992 or 1993 without proper documentation. While present in this country, Tristan-Madrigal has had a number of encounters with law enforcement. In 2001, he was convicted in Michigan state court of operating a vehicle while impaired and the use of a non-narcotic, controlled substance. He was removed to Mexico on July 1, 2001. Tristan-Madrigal returned to the United States without authorization shortly thereafter and was convicted again of operating a vehicle while impaired both in 2003 and in 2005. He was removed to Mexico for a second time sometime in 2005. Tristan-Madrigal again crossed the border into the United States without authorization. In 2008, he was convicted of operating a vehicle under the influence for the fourth time and removed for a third time to Mexico on May 20, 2008.

On June 4, 2008, while Tristan-Madrigal was residing in Mexico, the U.S. government secured an indictment against him for unauthorized reentry to the United States after a prior removal subsequent to a felony conviction in violation of 8 U.S.C. § 1326(a), (b)(1). The underlying offense upon which the government relied was Tristan-Madrigal's 2005 felony drunk-driving conviction in Michigan. Always persistent, on June 19, 2008, for the fourth time Tristan-Madrigal reentered the United States at a river crossing without authorization. He was arrested shortly thereafter and convicted of a misdemeanor for the June 19, 2008 unauthorized entry. After serving his sentence for the misdemeanor,

Tristan-Madrigal made his initial appearance in response to the pending federal indictment and pleaded guilty to the one count of illegal reentry in violation of § 1326(a).

The Presentence Investigation Report's ("PSR") undisputed Guidelines calculation assigned Tristan-Madrigal a total offense level of ten and a criminal-history category of IV, which resulted in a recommended range of 15 to 21 months' imprisonment. *See* U.S. Sentencing Guidelines ("U.S.S.G.") § 2L1.2(a), (b)(1)(D). The criminal-history category reflected Tristan-Madrigal's convictions for drunk driving and drug use in 2001; his convictions for drunk driving in 2003, 2005, and 2008; and his unlawful reentry in 2008. In his sentencing memorandum, Tristan-Madrigal requested a sentence within the Guidelines range, citing in support of his request his impoverished upbringing, his lack of education, and, surprisingly, his "significant contacts with the law." Def. Sent. Mem. at 2. The memorandum also noted that Tristan-Madrigal was "remorseful" and that he intended "to return to Mexico permanently" upon his release from custody. *Id.* at 3. Finally, the memorandum requested that the district court provide him with "any available educational and vocational training" as well as "alcohol abuse evaluation and treatment" during any prison term that the district court imposed. *Id.* at 3–4.

At the sentencing hearing, the district court responded to each argument that Tristan-Madrigal raised in his sentencing memorandum and in open court. After first acknowledging the advisory nature of the Guidelines and the need to impose a sentence that was sufficient but not greater than necessary to comply with 18 U.S.C. § 3553(a), the district court analyzed the nature and circumstances of Tristan-Madrigal's offense, noting that he had committed the actions underlying the § 1326 violation numerous times and that his actions were "quite problematic" given the potential danger to the public that drunk driving imposed. Sent. Hr'g Tr. at 12. Turning to Tristan-Madrigal's specific history and characteristics, the district court noted that he had grown up in poverty, lacked a formal education, and was a hard worker. But the district court also observed that Tristan-Madrigal had a serious alcohol problem and that his numerous drunk-driving convictions made him a dangerous person. The district court recognized that it was "fortunate that [Tristan-Madrigal] ha[d] not hurt someone or [him]self" and made apparent that his dangerousness was "a big concern" for the district court in "making [its] decision." *Id.* at 9. The district court concluded "that deterrence and protection of the public [we]re perhaps the two most important"

considerations in choosing its sentence because Tristan-Madrigal had "been quite persistent in returning to this country, and almost equally persistent in drinking and driving." *Id.* at 13. The district court also noted Tristan-Madrigal's need for alcohol-abuse treatment was "a somewhat important factor as well." *Id.*

Ultimately, the district court determined that the recommended Guidelines range of 15 to 21 months' imprisonment did not "properly reflect the statutory factors" because of Tristan-Madrigal's "repeated reentry[] and his serious drinking problem, which leads him to drive and to be quite dangerous." *Id.* at 14. The district court concluded that the "two factors" of deterrence and public protection counseled toward an above-Guidelines sentence of thirty-six months' imprisonment in this non "heartland or . . . mine run case." *Id.* Tristan-Madrigal made clear his objection to the substantive reasonableness of the above-Guidelines sentence and timely appealed.

## II.  ANALYSIS

Tristan-Madrigal argues that the district court's upward variance resulted in a sentence greater than necessary to achieve the sentencing goals outlined in 18 U.S.C. § 3553(a) because (1) the district court overemphasized his past criminal behavior; (2) the district court unreasonably considered his need for substance-abuse treatment and vocational training because it failed to recognize that as a non-English-proficient non-citizen Tristan-Madrigal is ineligible for custodial treatment and training; and, finally, (3) no other information in the record supported an upward variance of the magnitude that the district court imposed. For the reasons set forth below, we disagree with each of Tristan-Madrigal's arguments and affirm his sentence.

### A.  Standard of Review

This court reviews a district court's sentence for reasonableness. *United States v. Walls*, 546 F.3d 728, 736 (6th Cir. 2008). Because Tristan-Madrigal does not challenge the procedural reasonableness of his sentence, and explicitly disclaimed such a challenge at oral argument, this court need only "'consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard.'" *Id.* (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)); *see also United States v. Vallellanes*, 339 F. App'x 579, 582 (6th Cir.

2009) (unpublished opinion) (bypassing the procedural-reasonableness analysis because the defendant did "not contend that his sentence [was] procedurally unreasonable"). The essence of a substantive-reasonableness claim is whether the length of the sentence is "greater than necessary" to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a). "A sentence is substantively unreasonable if the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors or gives an unreasonable amount of weight to any pertinent factor." *Walls*, 546 F.3d at 736 (internal quotation marks and alterations omitted).

In our substantive-reasonableness review, we must "take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Gall*, 552 U.S. at 51. "Although a sentence that falls within the Guidelines range warrants a presumption of reasonableness in this circuit, there is no presumption against a sentence that falls outside of this range." *United States v. Herrera-Zuniga*, 571 F.3d 568, 590 (6th Cir. 2009). If the sentencing judge elects "an outside-Guidelines sentence . . . he [or she] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50. However, "[t]he fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Id.* at 51.

**B. Sentence Is Substantively Reasonable**

Tristan-Madrigal does not claim that the district court selected his sentence arbitrarily or failed to consider any relevant § 3553(a) factor; instead, as the basis for his claim of substantive unreasonableness, Tristan-Madrigal challenges the weight that the district court placed on his criminal history and further asserts that the district court unreasonably considered his need for custodial drug treatment and vocational training. We hold that the district court did not abuse its discretion by giving unreasonable weight to or overemphasizing Tristan-Madrigal's past criminal conduct. Moreover, although we express reservation about a district court's reliance on the need for custodial drug-abuse treatment and vocational training when sentencing an individual who will likely be ineligible for such programs, we cannot say, based on the record before us, that the district court relied improperly on that factor such that a remand for resentencing is required.

**1. Consideration of Past Drunk-Driving Convictions and Unauthorized Reentries Was Proper.**

Challenging the district court's reliance on his past drunk-driving and unauthorized-reentry convictions in selecting an above-Guidelines sentence, Tristan-Madrigal raises two specific objections. First, he claims that the district court should have afforded his past convictions and criminal acts lesser weight because they were not crimes against people or property. Second, he argues that the fact that the district court did not depart upward under U.S.S.G. § 4A1.3(a) for an underrepresented criminal history when calculating his Guidelines range provides conclusive evidence that the district court overrelied on his criminal history for purposes of the § 3553(a) analysis. We reject both claims.

At sentencing, the district court thoroughly explained its concern with Tristan-Madrigal's four drunk-driving convictions—one of which amounted to the felony conviction underlying the instant 8 U.S.C. § 1326 conviction. After discussing Tristan-Madrigal's continued recidivism despite previous periods of incarceration for the drunk-driving offenses, the district court concluded that because "an automobile in the hands of a drunk driver can be just as lethal a weapon" as a gun, Sent. Hr'g Tr. at 12, Tristan-Madrigal had shown himself to be a dangerous person who needed to be further deterred and from whom the public needed protection. *See* 18 U.S.C. § 3553(a)(2)(B)–(C). To be sure, Tristan-Madrigal's drunk-driving offenses luckily had resulted in no harm to persons or property, but he has presented us with no authority for the proposition that the district court was unreasonable in considering the potential lethality of his crimes in assessing their gravity and in determining the resulting appropriate sentence. Likewise, Tristan-Madrigal has also failed to present any authority to support the conclusion that the fact that he committed repeatedly a dangerous crime in a "victimless" manner somehow decreases the need for deterrence or public protection and warrants a lesser period of incarceration. There is no dispute that the act of drunk-driving is, in fact, dangerous and that every time Tristan-Madrigal drove while under the influence of alcohol he was putting himself and others at risk. The district court's consideration of Tristan-Madrigal's criminal history and the weight that the court afforded that history was reasonable. *See, e.g.*, *United States v. Carlton*, No. 08-1442, 2009 WL 4882519, at *8 (6th Cir. 2009) (unpublished opinion) (upholding a sentence as substantively

reasonable when the district court considered "the potential for violence created by [the] crime" at issue, among other factors).

The instant case is distinguishable from those cases where a sentencing court improperly speculates that an individual will cause some particular harm at a future point in time or will commit another, more harmful version of a criminal offense. *See United States v. Hughes*, 283 F. App'x 345, 353 (6th Cir. 2008) (unpublished opinion) ("[D]istrict courts may not make 'unfounded assumptions' when fashioning a sentence for a defendant." (internal quotation marks omitted)); *cf. United States v. Mikowski*, 332 F. App'x 250, 253–54 (6th Cir. 2009) (unpublished opinion) (indicating that the district court's statement "that if 'left unapprehended, [the defendant] was going to harm somebody'" could form the basis of a challenge to the reasonableness of a sentence, but concluding that "the record show[ed] that the district judge did not select [the defendant's] sentence, even in part, based upon [this] clearly erroneous finding[] of fact" (quoting the sentencing transcript)). The district court here did not hypothesize a future criminal action or result based on Tristan-Madrigal's past convictions but instead simply noted that each time that Tristan-Madrigal committed the offense of drunk driving he was engaging in harmful conduct that could result in death. In sum, the dangerousness of Tristan-Madrigal's behavior, coupled with the fact that Tristan-Madrigal's prior drunk-driving convictions were an ongoing problem directly related to and underlying the instant § 1326 conviction, support the district court's conclusion that Tristan-Madrigal was a dangerous person and needed to be incarcerated.

Similar reasoning applies to the district court's consideration of Tristan-Madrigal's repeated unauthorized reentries. First, both parties agree that Tristan-Madrigal had been removed from the United States on at least four occasions only to reenter each time without proper documentation, yet only one of those unauthorized reentries had been charged and included in Tristan-Madrigal's criminal-history calculation. Second, the sentencing transcript indicates, as it does with regard to the drunk-driving convictions, that the district court viewed Tristan-Madrigal's repeated removal-and-reentry cycles as extremely relevant to determining what length of sentence was sufficient to prevent recidivism; to protect the public from the drunk-driving incidents, which he committed regularly upon reentry; and to promote respect for the law. Tristan-Madrigal's history of four drunk-driving arrests and four unauthorized reentries over a time span of less than eight years leads us to conclude that

the district court's concern that Tristan-Madrigal would likely reoffend if not incarcerated for a time period greater than the top of the recommended Guidelines range was not unreasonable.

Tristan-Madrigal next contends that the fact that the district court did not depart upward under U.S.S.G. § 4A1.3(a) for an underrepresented criminal history further evidences the district court's overreliance on his criminal history in the § 3553(a) analysis. *See* U.S.S.G. § 4A1.3(a)(1) (permitting a sentencing court to depart upward from the Guidelines if it finds a "defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood" of recidivism). Specifically, Tristan-Madrigal argues that "the Guideline standard for an upward departure is instructive regarding what might be reasonable in a given case" and because a departure was not warranted, consideration of his criminal history for purposes of a variance was unreasonable. Reply Br. at 2–3. Although the standard for an upward departure under the Guidelines may be helpful in determining reasonableness, a district court does not necessarily abuse its discretion in considering criminal history that would not otherwise support a § 4A1.3 departure when that criminal history is directly relevant to the § 3553(a) factors.

As this Circuit recognized in *United States v. Grams*, "the same facts and analyses can, at times, be used to justify both a Guidelines departure and a variance, [but] the concepts are distinct." *United States v. Grams*, 566 F.3d 683, 687 (6th Cir. 2009); *see Herrera-Zuniga*, 571 F.3d at 586. Simply stated, "'variances from Guidelines ranges that a District Court may find justified under the sentencing factors set forth in 18 U.S.C. § 3553(a)' include a much broader range of discretionary decisionmaking" than departures. *United States v. Stephens*, 549 F.3d 459, 466–67 (6th Cir. 2008) (quoting *Irizarry v. United States*, 553 U.S.708, __, 128 S. Ct. 2198, 2203 (2008)); *see also Herrera-Zuniga*, 571 F.3d at 589; *United States v. Davis*, 537 F.3d 611, 617 (6th Cir. 2008) ("[A] trial judge's authority to exercise independent judgment in granting a variance after applying the § 3553(a) factors differs from his authority to grant departures."); *accord United States v. Solis-Bermudez*, 501 F.3d 882, 886 (8th Cir. 2007) ("[T]he standards justifying departures under the advisory Guidelines are narrower than the factors enumerated in § 3553(a), [and] there may well be cases that would not justify a departure under the Guidelines but [that] are appropriate for

a variance." (internal quotation marks omitted)). Thus, although the Guidelines may prohibit a district court from departing in light of a particular factor, that prohibition does not necessarily preclude the district court from considering the same or a similar factor when determining whether to vary under § 3553(a). *See Herrera-Zuniga*, 571 F.3d at 590; *accord Solis-Bermudez*, 501 F.3d at 886.

The district court's consideration of Tristan-Madrigal's repeated and virtually identical drunk-driving convictions and unauthorized reentries reflected the district court's belief that Tristan-Madrigal needed to be deterred further from engaging in dangerous criminal conduct and that a lengthy sentence was necessary to protect the public and promote respect for the law. All of these factors are proper considerations under § 3553(a). *See* 18 U.S.C. § 3553(a)(2)(A)–(C). The fact that the district court did not depart upward pursuant to § 4A1.3 neither per se precludes the district court from considering Tristan-Madrigal's personal criminal history under its § 3553(a) analysis nor obviates its obligation to do so.[1]

In sum, Tristan-Madrigal's prior convictions and criminal actions bore substantially on the instant offense and related directly to several § 3553(a) factors. Despite the fact that the district court did not depart upward from the Guidelines under U.S.S.G. § 4A1.3, the district court was entitled to consider Tristan-Madrigal's criminal history in its decision to vary above the recommended Guidelines range. The district court not only explained extensively its reasons for varying in light of Tristan-Madrigal's criminal past, but it also analyzed each of the § 3553(a) factors in determining what constituted an appropriate sentence. We simply cannot conclude that the district court abused its discretion in weighing Tristan-Madrigal's criminal history in support of its above-Guidelines sentence.

---

[1]Tristan-Madrigal also states that his sentence is substantively unreasonable because all of the § 3553(a) factors were accounted for in the recommended Guidelines calculation. To the extent that he is truly arguing for a bright-line rule, Tristan-Madrigal's proposed rule would mean that in any case where the Guidelines calculation encompassed all of the § 3553(a) factors, any sentence outside of the recommended range (whether above or below that range) always would be substantively unreasonable if the district court again mentioned those factors in the § 3553(a) analysis. This would preclude the district court from being able to comply with § 3553(a)'s mandate and would have the practical effect of making the Guidelines again mandatory, which is plainly not the law. We therefore reject Tristan-Madrigal's proposed rule.

### 2. The District Court Did Not Abuse its Discretion By Relying on Tristan-Madrigal's Need for Rehabilitation.

Tristan-Madrigal also claims that the district court unreasonably relied on his need for substance-abuse treatment and vocational training in selecting his thirty-six month sentence because he, as a non-English-proficient non-citizen, is ineligible for the Bureau of Prisons ("BOP") programs.[2]

We first note that Tristan-Madrigal specifically requested that the district court consider his need for "any available educational and vocational training" as well as "alcohol abuse evaluation and treatment," in his sentencing memorandum. Def. Sent. Mem. at 3, 4.[3]    Responding to this request, the district court addressed Tristan-Madrigal's alcoholism and his need for drug-abuse treatment at length during the hearing:

> THE COURT:  [Based] on what I have read, it appears that you have a serious problem with alcohol.
> THE INTERPRETER:  Yes, I understand . . . .
> THE COURT:  It appears to me that, aside from you coming into the country illegally, the big problem that you have is with alcohol.
>         . . . .

---

[2]Tristan-Madrigal asserted his ineligibility for the BOP programs for the first time in his Reply Brief.  This Circuit has held that issues raised for the first time in a reply brief are not properly before the panel unless they respond to arguments raised in the appellee's brief.  *See United States v. Carson*, 560 F.3d 566, 587 (6th Cir. 2009) (citing *United States v. Campbell*, 279 F.3d 392, 401 (6th Cir. 2002) ("[T]he appellant cannot raise new issues in a reply brief; he can only respond to arguments raised for the first time in appellee's brief." (citation omitted and alteration in original))).  In this case, however, Tristan-Madrigal has not forfeited the argument as it directly responds to several matters that the Government raised in its appellate brief.  For example, although Tristan-Madrigal challenged only the substantive reasonableness of his sentence, the Government nevertheless devoted a large portion of its appellate brief to arguing that Tristan-Madrigal's sentence was procedurally reasonable and that the district court relied on entirely appropriate factors in its sentencing.  Most relevant to this claim, the Government argued that the district court properly relied on the need for rehabilitation and medical treatment because the "Defendant needed serious intervention with regard to his alcohol problem."  Appellee Br. at 13.  Once the Government raised the propriety of the district court's consideration of rehabilitation, Tristan-Madrigal was within his right to respond directly to the Government's contention.

[3]Contrary to the Government's suggestion at oral argument, we do not dispose of this argument as invited error.  At no point did Tristan-Madrigal request an above-Guidelines sentence to receive the requested treatment and training, and he did, in fact, request consideration of the treatment only to the extent of his eligibility.  *See* Def. Sent. Mem. at 3 ("Mr. Tristan-Madrigal's status as an [undocumented] alien slated for deportation likely curtails the programming available to him.  However, he is requesting *any available* educational and vocational training." (emphasis added)).

> THE COURT:  It's one thing to send you back to Mexico, but if you don't address your drinking problem, you're either going to hurt someone very badly or you're going to hurt yourself or both.
> THE INTERPRETER:  Yes, I understand.
> THE COURT:  Have you ever had any alcohol counseling?
> THE INTERPRETER:  Once they made me take classes.
> THE COURT:  And that didn't help?
> THE INTERPRETER:  No.  Well, since you come to this country, and you're worried about your family and you have problems, and your parents, and maybe that's why I drank.  I don't have any other problems with drugs or anything.  Just the alcohol.  Maybe that's why.
> THE COURT:  Do you think that you are an alcoholic?
> THE INTERPRETER:  No.
> THE COURT:  Do you think it would help you if you had more counseling to understand why you drink and why it is important not to drink and drive?
> THE INTERPRETER:  I understand that.
> 　　　. . .
> THE COURT:  I think, Mr. Tristan-Madrigal, that before you can help your parents you're going to have to help yourself with your alcohol problem.

Sent. Hr'g Tr. at 8–11.  The district court continued by explaining that

> in these cases where deportation is a certainty, I normally do not take into account significantly providing the defendant with medical, educational, and correctional treatment, but in this case I think something of an exception is required because I think Mr. Tristan-Madrigal needs some serious intervention with regard to his alcohol problem.

*Id.* at 13.  The record does not make clear what drug-treatment program the district court had in mind or whether the district court was even familiar with the types of BOP programs available to an undocumented alien.  At no time did Tristan-Madrigal object to the district court's discussion of his need for treatment or to the district court's belief that Tristan-Madrigal would receive treatment while in BOP custody.  On appeal, however, Tristan-Madrigal claims that the district court abused its discretion in weighing this factor because he does not qualify for drug-treatment or vocational programs.

If the district court believed that Tristan-Madrigal would be eligible for drug-abuse treatment, despite evidence to the contrary, and relied on this factor when choosing his sentence, then a remand to the district court for resentencing would be

warranted. As we have indicated previously, a sentence is substantively unreasonable when "a district court examines a relevant factor but, despite rigorous analysis, gives unreasonable weight to that factor by failing to examine the full spectrum of information on the record before it relating to that factor." *Hughes*, 283 F. App'x at 351; *cf. United States v. Hunt*, 521 F.3d 636, 649 (6th Cir. 2008) (finding a sentence substantively unreasonable and noting that "a district court abuses its discretion when it relies on clearly erroneous facts" in imposing a sentence). The "record before us," however, must "clearly indicate[] that the district court failed to consider the full spectrum of information relevant to" Tristan-Madrigal's custodial-treatment options. *Hughes*, 283 F. App'x at 352; *id.* (noting that the appellate court's role through reasonableness review "is to bring . . . an oversight to the attention of the district court . . . so that the district court may address it, and make any appropriate adjustments to the sentence on remand").

Although Tristan-Madrigal's argument raises an interesting and potentially problematic issue, on the record before us we cannot conclude that the district court abused its discretion in considering Tristan-Madrigal's need for substance-abuse treatment and vocational training when selecting his sentence. First, Tristan-Madrigal has provided us with no evidence that he presented the district court with information at sentencing regarding the availability of BOP programming; second, the district court did not rely on the availability of one particular form of treatment or training that Tristan-Madrigal has shown is actually unavailable; and, third, our reading of the BOP regulations indicates that Tristan-Madrigal may, in fact, be eligible for at least one BOP drug-treatment program.[4]

According to the BOP's regulations, the BOP offers three types of drug-abuse treatment for incarcerated individuals: the Residential Drug Abuse Program ("RDAP"), the Non-Residential Drug Abuse Treatment Services Program, and a drug-abuse

---

[4] Our review of the reasonableness of Tristan-Madrigal's sentence would have been facilitated greatly by definitive information from either advocate as to (1) whether the BOP, in practice, excludes non-English-proficient non-citizens from drug-treatment and vocational programs and (2) whether Tristan-Madrigal had, up to this point, actually received any drug treatment. Unfortunately, however, neither counsel was able to provide the court with information pertaining to either inquiry, despite the ease with which they could have obtained this information.

education course. Tristan-Madrigal is clearly ineligible for RDAP in light of his pending removal and non-citizen status because he cannot complete the mandatory community-based phase of the program and is ineligible for the program's early-release benefits. *See* 28 C.F.R. § 550.53(b)(3); *id.* § 550.55(b)(1); *id.* § 550.56; *see generally* 18 U.S.C. § 3621(e). There are two other types of drug-treatment programs in the BOP system, however: a "[n]on-residential drug abuse treatment" program, which is apparently available at "[a]ll institutions," 28 C.F.R. § 550.52, and a BOP drug-abuse education course, *id.* at § 550.51. Unlike RDAP, the BOP asserts that "[t]hese options are currently available for 'non-U.S. citizen' inmates." *See* Drug Abuse Treatment Program, 74 Fed. Reg. 1892, 1893 (Jan. 14, 2009) ("The Bureau does not deny drug abuse treatment to inmates based on their citizenship. Instead, we offer several program options, such as a drug abuse education course or non-residential drug abuse treatment to inmates . . . .").

Despite the fact that the options are "currently available for 'non-U.S. citizen' inmates," *id.*, individuals who "cannot comprehend the English language" are still seemingly ineligible to participate in the non-residential program. U.S. Dep't of Justice, Psychology Treatment Programs, Program Statement, § 2.4.5, at 6 (Mar. 16, 2009) [hereinafter BOP Program Statement]. And although "limited English proficient inmates" are obligated to attend English as a Second Language courses to gain sufficient English competency to participate in the drug program, 28 C.F.R. § 544.40, "[s]entenced aliens with a deportation detainer" appear to be exempt, if not prohibited, from attending these classes. *Id.* § 544.41(a)(3). In essence, for the non-residential drug program, the regulations appear to operate to preclude those non-citizen detainees who are not English proficient, such as Tristan-Madrigal, from participating in the BOP's drug-rehabilitation program. Turning to the final BOP program, however, unlike RDAP and the non-residential drug-treatment program, it appears that "[t]he Drug Abuse Education course (DRUG ED) is available to all sentenced inmates at every institution." BOP Program Statement § 2.3.1 at 1; *see also* 28 C.F.R. § 550.51. There is no indication in the record that this would exclude non-citizen, non-English-proficient individuals such as Tristan-Madrigal from participating. And the record also contains no information that the drug-

abuse education course is conducted only in the English language, which could call into question the reality of the program's "availability."[5]

In conclusion, as Tristan-Madrigal has failed to present evidence that all opportunities for treatment are foreclosed and our independent research has not convinced us otherwise, we assume that our reading of the BOP's regulations and policies is correct. Although Tristan-Madrigal is not eligible for RDAP and the non-residential drug-abuse treatment program, he apparently remains eligible for the drug-abuse education course. Again, despite the fact that district court discussed at length Tristan-Madrigal's need for drug-treatment while in custody, the district court never mentioned what program it envisioned, and our review of the record does not indicate that the district court clearly had in mind something other than the drug-abuse education course. Were this not the case, Tristan-Madrigal certainly would have a much stronger argument for a remand premised on the conclusion that the district court relied on an improper fact or overweighed a relevant factor when sentencing Tristan-Madrigal and, as a result, imposed a substantively unreasonable sentence.[6]

*Gall* directs district courts to put forth persuasive reasons in light of the 18 U.S.C. § 3553(a) factors to support a variance. *Gall*, 552 U.S. at 50. Our review of the totality of the circumstances convinces us that the district court's reliance on Tristan-Madrigal's criminal history as well as his need for drug-abuse treatment and vocational training in sentencing him above the recommended Guidelines range was not an abuse of discretion.

---

[5] We also reject Tristan-Madrigal's argument that the district court erred in weighing his need for vocational training. The record evidence as to his eligibility for vocational programs is extremely limited, and although it may be that Tristan-Madrigal's non-citizen status and lack of English-language competency preclude him from participating in BOP programming, we cannot conclude in the instant case that the district court actually relied on Tristan-Madrigal's need for such training in selecting his sentence. The district court's mention of this factor was fleeting and appears to be in response to Tristan-Madrigal's request for any available training, as compared to the district court's lengthy discussion of the need for substance-abuse treatment.

[6] The sentencing transcript plainly reflects the district court's concern for Tristan-Madrigal's well being, and we recognize that district courts often fashion sentences with the understanding that a particular term of incarceration will make an individual eligible for various BOP programs, including drug treatment. In light of that reality, we urge counsel to fulfill their advocacy roles and, at a minimum, investigate their clients' eligibility for BOP programming prior to sentencing.

## III. CONCLUSION

For the reasons outlined above, Tristan-Madrigal's sentence was not substantively unreasonable.  The district court did not abuse its discretion in relying on Tristan-Madrigal's extensive criminal history and need his for rehabilitation, two factors that were closely related to the instant 8 U.S.C. § 1326 offense.  Because the record supports the district court's above-Guidelines sentence, we **AFFIRM** the judgment of the district court.