**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0478n.06

**No. 09–1409**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**Aug 05, 2010**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON REVIEW FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | SOUTHERN DIVISION |
| JEREMY ADAMS, | ) | |
| | ) | |
| Defendant-Appellant. | ) | **O P I N I O N** |
| _____ | ) | |

**Before:  GILMAN and WHITE, Circuit Judges; and WATSON, District Judge.**[*]

**MICHAEL H. WATSON, District Judge.**  Defendant-Appellant, Jeremy Adams, pleaded

guilty to a charge of possession with intent to distribute methamphetamine, in violation of 21 U.S.C.

§§ 860a and 841(a)(1).  The District Court for the Western District of Michigan sentenced him to

an above-Guidelines sentence of sixty months, which the district court ordered to run consecutively

to his state incarceration for possession of methamphetamine as a habitual offender, second offense.

At the sentencing hearing, Adams challenged the application of an upward variance and the length

of his sentence.  Adams now appeals the substantive reasonableness of the sentence.  For the

following reasons, we **AFFIRM** the district court's sentence.

---

[*] The Honorable Michael H. Watson, United States District Judge for the Southern District
of Ohio, sitting by designation.

## I.

On April 3, 2008, Michigan Child Protective Services informed the Kalamazoo Valley Enforcement Team that a four-year old child was recently hospitalized for breathing difficulties that possibly stemmed from exposure to a methamphetamine laboratory at the child's residence, 1015 Chicago Avenue, Kalamazoo, Michigan (the "Residence"). In response, officers went to the Residence where, outside the front door, they found a duffle bag containing a "one pot" reactor vessel used to produce methamphetamine. The child's grandparents arrived at the home at this time. The grandmother stated that she and her husband lived at the Residence with her daughter, Ms. Phillips, Ms. Phillips' two children aged four and six, and her daughter's boyfriend, Jeremy Adams.[1] The grandmother suspected Adams was making methamphetamine in the Residence; she did not notify the police because she feared that Adams would burn down the Residence in retaliation or that the children would be taken.

The grandmother permitted police to search the residence. When the police entered, the Residence smelled strongly of ammonia. They found Ms. Phillips sleeping face down on her bed atop coffee filters and plastic bottles with holes in the lids. These items, and the gallon bottle of ammonia found next to the bed, are often used to manufacture methamphetamine. Also in the room was a child's fishing pole that later tested positive for methamphetamine residue. When officers interviewed Ms. Phillips, she stated that Adams, who was not home at the time, had manufactured methamphetamine in the Residence earlier in the day.

---

[1] Some evidence suggests the four-year old may have been living with her paternal grandmother at the time of the offense, but it is not disputed that the six-year old lived at the Residence at the time of the offense.

The children's father, Jay Whipple, arrived during the interview and informed the police that he believed the four-year old child's breathing difficulties stemmed from the manufacture of methamphetamine in the Residence. Whipple also told the police that the six-year old found a grocery bag containing drain cleaner and salt at the Residence, and Whipple believed that these were used to manufacture methamphetamine.

Adams was later arrested. He took responsibility for almost all the items seized from the Residence, including the duffle bag containing the "one pot" reactor. He stated that he made methamphetamine for not only his use, but also to give to Ms. Phillips and to sell to her father. Though Adams admitted to the manufacture of methamphetamine, he said that he mostly manufactured it at his friend's house, and only once or twice manufactured it in a car parked in front of the Residence.

As a result of this investigation, Adams was charged on April 24, 2008 by Criminal Complaint for the knowing and intentional attempt to manufacture methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C). He was arrested May 25, 2008, on a local warrant issued for a separate incident. He pleaded guilty to a state charge of possession of methamphetamine for a January 2008 incident. As a habitual offender, he was sentenced by the state court to a period of incarceration for two to fifteen years. Then, on June 4, 2008, as a result of the April 3, 2008 incident, Adams was indicted by the federal government on one count of manufacturing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and one count of manufacturing methamphetamine on premises where an individual under the age of eighteen was present or resided, in violation of 21 U.S.C. §§ 860a and 841(a)(1).

After his federal indictment, Adams proffered information to the government. Though Ms. Phillips claimed Adams manufactured methamphetamine in their bedroom, Adams denied it; instead, he admitted to manufacturing methamphetamine at a friend's house and "gassing off"[2] in the car in the front yard of the Residence several times. He stated that after making methamphetamine at his friend's house, he would store the equipment and unused ingredients in the bedroom he shared with Ms. Phillips. He admitted to making one to two grams of methamphetamine two or three times per week from October 2006 to April 2008.

Due to conflicting evidence from Ms. Phillips and Adams regarding the location of the manufacture of methamphetamine, Adams was permitted to plead guilty to a superseding information charging him not with the manufacture of methamphetamine, but instead with possession of methamphetamine with intent to distribute on premises where an individual under the age of eighteen was present or resided, in violation of 21 U.S.C. §§ 860a and 841(a)(1). Adams pleaded guilty on November 14, 2008. At that time, Adams admitted that he possessed methamphetamine in a "one pot" bottle on the porch of the Residence, that Ms. Phillips's seven-year old[3] was residing at the Residence at the time, and that he intended to distribute the methamphetamine. The plea was accepted.

In anticipation of Adams' sentencing, the Probation Office prepared a Presentence Report, and in so doing, calculated the applicable advisory United States Sentencing Guidelines Manual ("U.S.S.G." or "Guidelines") parameters. The Probation Office calculated Adams' total offense level as twelve. This included a two-level enhancement applied pursuant to U.S.S.G. §

---

[2] "Gassing off" is one stage in the manufacture of methamphetamine.

[3] Ms. Phillips' six-year old presumably had a birthday between April and November.

2D1.1(b)(10)(B) to account for the presence of a child at the Residence. The Probation Office calculated Adams' criminal history score of twenty-three points and placed him in Criminal History Category VI. The Probation Officer, however, suggested that although Category VI is the most serious criminal history category, it under-represented the seriousness of Adams' criminal history. Adams' numerous prior offenses and the ineffectiveness of any prior resulting sentences suggested Adams was very likely to commit future crimes.

Criminal History Category VI is applicable to all defendants with thirteen or more criminal history points. Adams had a criminal history score of twenty-three. Adams' lengthy and active criminal history began at age seventeen and culminated in the instant offense. In the intermediate years, Adams was convicted of many charges related to or involving alcohol, marijuana, and methamphetamine. Due to multiple methamphetamine-related charges, Adams was classified as a habitual offender. Although Adams' offenses initially resulted in twenty-four criminal history points, twenty-two other offenses were not counted in reaching that number. The score was further reduced to twenty-one points pursuant to U.S.S.G. § 4A1.1(c), which provides that only four one-point convictions are scored. This score of twenty-one points was increased by two points, pursuant to U.S.S.G. § 4A1.1(e), because the instant offense was committed less than two years from Adams' release from custody on January 7, 2007, resulting in a final criminal history score of twenty-three.

Because the Probation Officer believed that Criminal History Category VI under-represented Adams' likelihood to commit future crimes and criminal history, she recommended a five-level increase in the total offense level pursuant to U.S.S.G. § 4A1.3. This increase would result in a Guidelines sentence range of 51–63 months. The Probation Office further recommended an above-Guidelines sentence of sixty months to run consecutively to Adams' state sentence.

5

The Government also supported an upward deviation based on Adams' considerable criminal history and the fact that the two-level enhancement pursuant to U.S.S.G § 4A1.1(e) increased the sentence by only seven months. Also, the Government noted that the offense level was based only on the amount of methamphetamine residue left in the "one pot" bottle, rather than the amount of methamphetamine actually produced. Additionally, the Government submitted that the educational or vocational training and the mental health/substance-abuse counseling Adams needed would take longer to complete than the Guidelines range of 30–37 months. The Government recommended that if the district court concluded that an upward departure pursuant to U.S.S.G. § 4A1.3 was not warranted then the court alternatively employ an upward variance from the Guidelines range.

Adams was sentenced March 30, 2009. The district court, instead of adopting the Probation Office's recommendation to depart pursuant to U.S.S.G. § 4A1.3, determined that a variance from the advisory Guidelines range of 30–37 months was appropriate. The court imposed a sentence of sixty months to run consecutively to Adams' state sentence. In making that decision, the court considered Adams' criminal history, his history of manufacturing methamphetamine, the presence of a child at the Residence, Adams' need for substance-abuse counseling, and the need to protect the public from his additional crimes. Adams now challenges the substantive reasonableness of his sentence.

## II.

### A.     Legal Standards

We apply an abuse-of-discretion standard to determine if the sentence was substantively unreasonable. *Gall v. United States*, 552 U.S. 38, 45, 50 (2007). In so doing, we must "keep in mind that '. . . appellate courts must respect the role of district courts and stop substituting their judgment

6

for that of those courts on the front line.'" *United States v. Christman*, 607 F.3d 1110, 1117 (6th Cir. 2010) (quoting *United States v. Phinazee*, 515 F.3d 511, 521 (6th Cir. 2008)) (alterations in *Christman*).

A sentence is substantively unreasonable where "the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008). "While a sentence within the Guidelines is presumed to be reasonable, a sentence outside the Guidelines range is not presumed unreasonable." *Christman*, 607 F.3d at 1118 (citing *United States v. Houston*, 529 F.3d 743, 755 (6th Cir. 2008)). To determine whether the sentence is substantively reasonable, we must consider "the totality of the circumstances, including the extent of any variance from the Guidelines range." *Gall*, 552 U.S. at 51. A challenge to the weight afforded to the § 3553(a) factors presents a situation in which the appellant argues that "'a district court examine[d] a relevant factor but, despite rigorous analysis, [gave] unreasonable weight to that factor by failing to examine the full spectrum of information on the record before it relating to that factor.'" *United States v. Tristan-Madrigal*, 601 F.3d 629, 638 (6th Cir. 2010) (quoting *United States v. Hughes*, 283 F. App'x 345, 351 (6th Cir. 2008)).

**B.  Substantive Reasonableness**

In this case, the district court considered a number of relevant § 3553(a) factors in creating a sentence that was "sufficient but not greater than necessary to comply with the purposes of Section 3553(a), the proportionality analysis," and that reflected "both the specific offenses and the individual offender." (Sentencing Tr. 18:13–17.) The district court considered the nature of the offense and stated that the presence of a child at the Residence "ratchets up the seriousness of the

7

offense[.]" (*Id*. at 19:14–15.) The district court considered the nature of Defendant, finding relevant that Adams kept a drug he knew was dangerous at the Residence that he shared with a child, the increasingly serious pattern of prior offenses, Adams' upbringing, and his multiple serious substance abuse problems. The district court indicated that it found the need to provide punishment and to promote respect for the law to be "quite important" because Adams' recent incarceration on his state conviction appeared to have "finally gotten his attention." (*Id*. at 21:14–22.) The district court also determined that Adams appeared to be "at very high risk to [reoffend] without some serious intervention aimed at helping him to overcome the problems that he has with substance abuse." (*Id*. at 22:1–6.) As such, the district court was mindful of the need to protect the public from Adams' possible future crimes involving the use and manufacture of methamphetamine. Finally, the district court considered the need to provide necessary medical, educational, and correctional treatment to Adams; the district court found this to be "maybe even the most important" factor. (*Id*. at 22:12–18.)

The district court found that "all five of those factors [fell] on the high end of the scale" (*Id*. at 23:5–7), and therefore, the advisory Guidelines range did not sufficiently reflect the § 3553(a) considerations. (*Id*. at 23:5.) Adams suggests the district court placed unreasonable weight on three factors: Adams' prior criminal history, the presence of a child at the Residence, and the need to provide Adams with medical, education, and corrections treatment. Adams argues that the district court's stated reasons for the variance "are not sufficiently compelling to justify such a steep degree of variance, neither individually nor in aggregate." (Br. for Def.-Appellant 17.)

### 1.    Prior criminal offenses

Adams asserts numerous arguments to show the district court attributed an unreasonable amount of weight to his prior criminal offenses. To begin, Adams cites U.S.S.G. § 4A1.3

8

Commentary Note 2(B), which states that departures from Criminal History Category VI are appropriate for

> an egregious, serious criminal record in which even the guideline range for Criminal History Category VI is not adequate to reflect the seriousness of the defendant's criminal history . . . . In determining whether an upward departure from Criminal History Category VI is warranted, the court should consider that the nature of prior offenses rather than simply their number is often more indicative of the seriousness of the defendant's criminal record.

U.S. SENTENCING GUIDELINES MANUAL § 4A1.3 cmt. 2(B) (2008). Adams argues that although his past offenses are numerous, they do not reveal him to be a violent offender, and they are neither egregious nor as serious as crimes typically seen in Criminal History Category VI.[4]

This argument fails because the district court applied a variance, rather than a departure, and "[a]lthough the standard for an upward departure under the Guidelines may be helpful in determining reasonableness, a district court does not necessarily abuse its discretion in considering criminal history that would not otherwise support a [U.S.S.G.] § 4A1.3 departure when that criminal history is directly relevant to the § 3553(a) factors." *Tristan-Madrigal*, 601 F.3d at 635. Indeed, Adams admits the district court is not, in applying a variance, bound by Commentary to the advisory Guidelines. Variance propriety is not based solely on the Guidelines, but rather on the consideration of the factors delineated in 18 U.S.C. § 3553(a).

> Whereas § 4A1.3(a)(1) permits an upward departure only where the defendant's criminal history category "substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes," the court's authority under § 3553(a) more broadly permits consideration of "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as "the need for the sentence imposed . . . to protect the public

---

[4] Adams suggests the district court agreed with this assertion, but actually the district court found that although some of the offenses were minor, there was a pattern of increasing seriousness, and the minor crimes perhaps pointed to more serious future offenses.

9

from further crimes of the defendant." A district court always can impose an above-Guidelines sentence so long as it is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a). . . . The only requirement is that the court determine, "in light of all the facts and circumstances of the particular case before it, whether the range in question is appropriate to the case."

*United States v. Herrera-Zuniga*, 571 F.3d 568, 589–90 (6th Cir. 2009) (internal citations omitted). Even so, if the district court placed an unreasonable amount of weight on any pertinent factor, the sentence would be substantively unreasonable. *Conatser*, 514 F.3d at 520.

Next, Adams makes just such an argument. He asserts that although he had numerous convictions, his offenses were non-violent and not as serious as those commonly found in Category VI, thus the applicable Guidelines range adequately accounts for his past criminal behavior, making the district court's upward variance unreasonable.

The commentary to the Guidelines, although not controlling, is helpful in determining reasonableness. *See Tristan-Madrigal*, 601 F.3d at 635. It directs the district court to consider whether "reliable information indicates the criminal history does not adequately reflect the seriousness of the defendant's criminal history or likelihood of recidivism." U.S. SENTENCING GUIDELINES MANUAL § 4A1.3 cmt. background (2008). The district court, citing the steady stream of increasingly serious offenses, almost all of which involved the use of alcohol, marijuana, or methamphetamine, found Adams presented a high risk of recidivism. Furthermore, the district court noted that the threshold for Category VI is thirteen points, and Adams scored ten points more than that amount without the attribution of points to all of Adams' convictions. Given the high number of increasingly serious convictions, and the fact that alcohol, marijuana, or methamphetamine were involved in many of the convictions, it was not unreasonable for the district court to determine, as

10

it did, that Adams was "spiraling out of control" (Sentencing Tr. 11:9–10), thereby presenting a high risk of recidivism. Thus, the district court did not attribute unreasonable weight to this factor.

### 2.      Presence of a child at the Residence

Adams argues that the variance imposed by the district court was substantively unreasonable because the district court afforded too much weight to the presence of a child at the Residence. Adams asserts that because his calculated total offense level already included a two-level increase for the presence of a child at the Residence, and his crime was "not particularly egregious[,]" it was inappropriate for the district court to give significant weight to this factor. This argument fails, however, because a court does not attach unreasonable weight to a factor merely because it considers it both under the advisory Guidelines and in connection with the § 3553(a) factors. *See United States v. Hope*, 167 F. App'x 531, 534 (6th Cir. 2006) (rejecting a substantive reasonableness challenge to a sentence based on invalidity of "double counting" the threat of violence presented by defendant in both the mandatory minimum sentence and the § 3553(a) likelihood of recidivism and danger to public factors).

Moreover, Adams asserts that his crime was not egregious, and takes issue with the fact that the district court did not explain why this case differs from mainstream child-presence cases, thereby warranting a sentence greater than that contemplated by the Guidelines. However, although Adams asserts that his behavior was not egregious, the facts of this case are disturbing. Here, Adams was not merely storing methamphetamine at the child's residence, he also stored the ingredients and equipment used to make methamphetamine at the Residence, and methamphetamine residue was found on a child's toy in the Residence. Adams admitted the "one pot" reactor was sitting next to the door the child used to enter and exit the Residence on a daily basis. Furthermore, the children

11

may have had access to the ingredients used to manufacture methamphetamine. The district court determined that the drug was particularly dangerous, and the children were "actually exposed to the drug and/or its residue." (Sentencing Tr. 19:13–14.) The district court recognized that Adams consistently stated that he never manufactured methamphetamine in the Residence; however, it also noted that there were a number of items present at the Residence that were consistent with the manufacture of methamphetamine therein. These items included the "one pot" cooker and a gallon bottle of ammonia.

The district court stated that the child's presence was the factor that increased the seriousness of the offense and made the case "stand out[.]" (*Id*. at 19:5.) It was not unreasonable for the district court to conclude that the actual presence of methamphetamine residue on the toys and the children's exposure to the drug or its residue made this case more serious than a case involving the drugs that were stored in a residence without resultant exposure to children residing therein. The district court did not give unreasonable weight to this factor.

### 3. Provision of medical, educational, and correctional treatment

Adams also argues the district court afforded too much weight to the time needed to provide him with medical, educational, and corrections treatment. Adams asserts that this factor does not warrant a higher sentence because the drug program in which he will enroll lasts only eighteen months, a time period that does not exceed a within-Guidelines sentence. But Adams does not suggest that the district court's variance was imposed solely to enable Adams to receive substance-abuse treatment. *Cf. United States v. Yopp*, 453 F.3d 770, 774 (6th Cir. 2006) (holding that where the sole purpose of sentence was to provide mental health and substance-abuse treatment, it was substantively unreasonable to sentence defendant to twenty-four months because the 500-hour drug

treatment program could be finished in nine months). Instead, Adams argues that the "sentence should not be increased based on his need for [medical and educational] treatment." (Br. for Def.-Appellant 21.)

> This argument fails because Adams'
>
> argument that the drug-treatment program does not take [sixty] months to complete translates into an argument that his sentence should be only as long as the drug-treatment program takes to fulfill. The district court's concerns with the public's protection and with [Adams'] criminal record are not adequately addressed by a five-hundred hour drug treatment program.

*United States v. Bailey*, 488 F.3d 363, 369 (6th Cir. 2007).

The district court placed great weight on Adams' need for substance-abuse treatment and vocational training; it stated that it intended the sentence to provide "opportunities to improve [Adams'] life and to break this cycle that [he has] been in[.]" (Sentencing Tr. 26:6–8.) However, as in *Bailey*, the district court also cited numerous other § 3553(a) factors that suggested additional incarceration was necessary. Accordingly, Adams has not provided us with any evidence that the district court "'fail[ed] to examine the full spectrum of information on the record before it relating to that factor.'" *Tristan-Madrigal*, 601 F.3d at 638 (quoting *Hughes*, 283 F. App'x at 351). Adams has not shown that the district court afforded an unreasonable amount of weight to this factor.

## C.    Consideration of the factors in aggregate

Although it is true that major variances must be supported by significant justifications, *Gall*, 552 U.S. at 50, in crafting Adams' sentence the district court carefully and comprehensively considered the totality of the circumstances, the recommended Guidelines sentence, and all relevant § 3553(a) factors. After this thorough analysis, the district court found that a sentence within the Guidelines range would not be appropriate. The district court found that because children were

13

involved, this was a serious offense, and because Adams lacked direction and control, he was a serious offender; indeed, the district court found that all factors considered were quite serious. The district court did not, as Adams suggests, rely predominantly on only three factors. We "must give due deference to the district court's decision that the § 3553(a) factors, on the whole, justify the extent of the variance." *Gall,* 552 U.S. at 51. Adams requests that we reevaluate the factors considered by the district court and weigh them differently, but due to the significant deference owed to the district court in this situation, that is improper. Because the district court did not place unreasonable weight on the factors considered in this case, the sentence is not substantively unreasonable.

## III.

For the above reasons, we **AFFIRM** the sentence of the district court.