NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0342n.06

No. 19-1904

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jun 11, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| OLMAN RENE MATUTE-ARGUETA, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

Before: GIBBONS, LARSEN, and NALBANDIAN, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. In January 2018, Olman Rene Matute-Argueta completed a term of imprisonment for aggravated felon reentry and, for the fourth time in his life, was removed from the United States. Just a few months later, in May 2018, Matute-Argueta violated the terms of his supervised release by again illegally reentering the country. The Western District of Texas convicted and sentenced Matute-Argueta to 37 months' imprisonment for his illegal reentry, and the Western District of Michigan imposed a consecutive 21-month sentence for Matute-Argueta's supervised release violations. Matute-Argueta claims that the Western District of Michigan's sentence is substantively unreasonable because the district court arbitrarily varied upward from his Guidelines range. We disagree and affirm.

I.

Matute-Argueta, a Honduran citizen, has a long history of illegally entering and being removed from the United States. He first illegally entered the United States in 1993, and he was removed back to Honduras in 1998. He illegally reentered the United States that same year and,

after serving 90 days in custody, was again removed from the country. Undeterred, Matute-Argueta illegally reentered in 2000. In 2005, he was convicted for possessing a firearm and, after serving a 21-month sentence, was removed from the United States in 2007. But Matute-Argueta illegally returned yet again in 2008.

In 2016, authorities arrested Matute-Argueta in Zeeland, Michigan. Matute-Argueta pled guilty to a charge of aggravated felon reentry, in violation of 8 U.S.C. §§ 1326(a), (b)(2). His Guidelines range of imprisonment was 18 to 24 months. The Western District of Michigan sentenced Matute-Argueta to 21 months' imprisonment followed by two years of supervised release. Matute-Argueta completed his term of imprisonment, was placed on supervised release in January 2018, and was removed from the United States in February 2018.

Matute-Argueta did not stay away for long. In May 2018, Matute-Argueta violated the terms of his supervised release by, once again, illegally entering the United States. In the Western District of Texas, Matute-Argueta pled guilty to illegally reentering as a removed alien and was sentenced to 37 months' imprisonment. Matute-Argueta was then returned to the Western District of Michigan for a hearing on his supervised release violations. He pled guilty.

The Western District of Michigan revoked Matute-Argueta's supervised release and imposed a sentence of 21 months' imprisonment, to run consecutively to the 37-month sentence imposed by the Western District of Texas. The 21-month sentence was a 7-month upward variance from the Guidelines range of 8 to 14 months. The district court noted that its previous within-Guidelines sentence failed to deter Matute-Argueta and, therefore, the variance was justified in order to deter Matute-Argueta, an aggravated felon, against illegally reentering the country again. Matute-Argueta now appeals the sentence imposed by the Western District of Michigan.

II.

Matute-Argueta contends that his sentence imposed by the Western District of Michigan is substantively unreasonable because the 7-month upward variance was arbitrary and based on a supervised release violation that was already accounted for in his sentence imposed by the Western District of Texas.  His argument is unavailing.

We review the substantive reasonableness of the district court's above-Guidelines sentence under an abuse of discretion standard.  *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Bolds*, 511 F.3d 568, 575 (6th Cir. 2007).  A substantive reasonableness challenge is "a complaint that the court placed too much weight on some of the [18 U.S.C.] § 3553(a) factors and too little on others in sentencing the individual."  *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019) (quoting *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018)).  Ultimately, the length of the sentence may not be "greater than necessary" to achieve the sentencing goals set forth in § 3553(a).  *United States v. Tristan-Madrigal*, 601 F.3d 629, 632–33 (6th Cir. 2010) (quoting § 3553(a)).

The district court here acted within its discretion and imposed a substantively reasonable sentence soundly based in the § 3553(a) factors.  First, the district court considered the "nature and circumstances" of Matute-Argueta's underlying offense of aggravated felon reentry and the need to punish such "abject violation[s]" of our immigration laws.[1]  § 3553(a)(1); DE 46, Revocation Hr'g Tr., PageID 163.  Matute-Argueta had been repeatedly removed from the United States and warned not to return illegally.  Yet, Matute-Argueta ignored these warnings and illegally reentered the country, and he did so again in 2018 within just a few months of his fourth removal.  Relatedly,

---

[1] When sentencing upon revocation of supervised release, § 3553(a)(1) requires a district court to consider the nature and circumstances of the *original* offense of conviction, not the violation conduct.  *United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011).

3

the "history and characteristics" of Matute-Argueta—being an aggravated felon with a decades-long history of illegally entering and being removed from the country—justified an above-Guidelines sentence. § 3553(a)(1).

The district court also reasonably based its upward variance on the need to deter Matute-Argueta and others. *See* § 3553(a)(2)(B). The district court noted that the previous sentence it imposed for Matute-Argueta was within the Guidelines range, but that Matute-Argueta nevertheless wasted little time in illegally reentering the country again. In turn, the district court reasoned, an above-Guidelines sentence was necessary this time in order to properly deter Matute-Argueta. Although the district court appears to have relied heavily on this factor, it was within its discretion to do so, particularly given Matute-Argueta's history of recidivism. *See United States v. Marks*, 722 F. App'x 398, 402–03 (6th Cir. 2017) (finding that the imposition of a 36-month sentence for a supervised release violation—where the Guidelines called for 8 to 14 months—was substantively reasonable because the defendant's original offense and subsequent supervised release violation indicated a pattern of recidivism).

Finally, the district court was within its discretion to vary upward in Matute-Argueta's supervised release revocation sentence even if, as Matute-Argueta claims, the sentence imposed by the Western District of Texas already accounted for the same supervised release violations. This was not impermissible double-counting because the Western District of Texas sentenced Matute-Argueta for his new reentry offense, while the Western District of Michigan sentenced him for violating the terms of his supervised release.

Given Matute-Argueta's steadfast disobedience of this nation's immigration laws, the district court's 7-month upward variance was reasonable and not "greater than necessary" to achieve the sentencing goals of § 3553(a). Accordingly, we affirm.