NOT RECOMMENDED FOR PUBLICATION
File Name: 14a0211n.06

No. 12-6267

FILED
Mar 18, 2014
DEBORAH S. HUNT, Clerk

## UNITED STATES COURTS OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| VINCENT NUNLEY, | ) | DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |
| | ) | |

BEFORE:    GRIFFIN, WHITE, and STRANCH, Circuit Judges.

**STRANCH, Circuit Judge**.   Vincent Nunley appeals his above-Guidelines sentence of 252 months imposed after he pled guilty to conspiring to distribute over five kilograms of cocaine.  He argues that the district court did not adequately explain the upward variance and that the sentence is substantively unreasonable because the court considered factors already accounted for in the Guidelines and failed to consider factors favorable to him.  Finding these arguments unpersuasive, we **AFFIRM** Nunley's sentence.

## I.    FACTS AND PROCEDURAL BACKGROUND

Vincent Nunley participated in a conspiracy, lasting from 2005 to 2011, to distribute cocaine.  In 2011, federal agents utilized a cooperating witness to arrange a controlled delivery of approximately 30 ounces of cocaine from Nunley.  After Nunley arrived at the meeting place in his car and was positively identified by the cooperating witness, agents attempted to stop

1

Nunley's car. Nunley fled, first in his car and then on foot, discarding several plastic baggies of cocaine. Nunley was eventually caught and arrested, and agents later found more cocaine plus large amounts of cash in Nunley's home. Nunley admitted to selling a co-conspirator approximately forty ounces of cocaine every other month for a period of six years.

Nunley reached an agreement with the Government to plead guilty to conspiring to distribute over five kilograms of cocaine, and the plea agreement included forfeiture of certain assets. The Government "amend[ed] its request for a money judgment to the amount of $1,230,000," which was less than the amount listed in the Superseding Indictment, "and withdr[ew] its request to forfeit real estate." However, the plea agreement made clear that Nunley "underst[ood] that the United States reserve[d] the right to attempt to enforce the money judgment against all assets, including this real estate." The understanding that the real estate was not separately forfeited but could be used toward the money judgment was reiterated during plea proceedings. The Government eventually obtained a forfeiture order for the real estate, taking title from "Dalemonta Nunley, who took title to the property after it was named in an indictment."

Based on the drug quantity plus a two-level increase under USSG § 3C1.2 for recklessly creating a substantial risk of death or serious injury while fleeing from law enforcement, the court calculated Nunley's offense level as 36. The court granted the Government's motion for a three-level reduction under § 3E1.1(b) for acceptance of responsibility, resulting in an offense level of 33. Nunley had a Criminal History Category of IV, resulting in an advisory Guidelines range of 188-235 months. Nunley, however, was subject to a statutory minimum of 240 months, under 21 U.S.C. §§ 841(b)(1)(A)(ii) and 846, because he had been convicted of a prior drug

felony; thus 240 months became the Guidelines sentence. Nunley did not object to this calculation.

The court then heard arguments regarding the other sentencing factors. Nunley's counsel argued that a minimum sentence of 240 months would be most appropriate because Nunley had "proffered" with the Government—meaning he provided information—but that it had not resulted in a substantial assistance motion; had run a successful cleaning business; was up-to-date in child-support payments despite being incarcerated; had the support of his family; had a continuing substance-abuse problem; and wanted to pursue a career in business administration. Counsel also said that Nunley was frustrated that the Government seized the real estate despite his plea negotiations because the real estate was an independent source of income for his family.

Nunley himself also addressed the court noting that though the Government may feel he had not disclosed all information surrounding the conspiracy, he had done so. He questioned the Government's assumption that he was the "main supplier" and said "I'm just the guy [a co-conspirator] threw under the bus to save him and his wife." Nunley said he felt "duped" into signing the plea agreement because the Government told him that his rental property "wasn't going to be a part of it." "I thought I was innocent until proven guilty, but to me, it seemed like I was guilty until proven innocent because I've been in jail a year and I wasn't able to get out on bond to help do my business situation." Nunley failed to apologize for his actions.

The Government requested a sentence of 264 months arguing that the Guidelines sentence at the 240-month statutory minimum did not account for certain factors, including Nunley's role as the primary supplier of cocaine in a conspiracy of ten people that lasted for many years, and his criminal history that was littered with violence and drugs. The Government's response to Nunley's arguments and those of his counsel was that: Nunley had

3

always known that the rental property was susceptible for use toward the monetary judgment; it was not convinced that Nunley had been honest when he proffered; and Nunley's conduct reflected intentional behavior over a long period of time.

The court then conducted a lengthy sentencing analysis, finding that the factors from 18 U.S.C. § 3553(a), especially the need to provide adequate deterrence and the need to protect the public, were all unfavorable to Nunley. Nunley had a violent criminal history that "spans his entire adult life," he had played an integral role in the offense, and he "attempts to blame everyone else for his plight other than himself." The court determined that a "slight variance" of an additional twelve months was warranted and sentenced Nunley to 252 months' imprisonment. The court's analysis is discussed in more detail below.

Nunley now challenges his sentence.

## II.    ANALYSIS

Nunley argues that in sentencing him to 252 months, the district court 1) failed to articulate sufficient reasons for imposing a sentence above the Guidelines range, 2) considered factors already taken into account by the Guidelines, and 3) failed to consider 18 U.S.C. § 3553(a) factors that were favorable to Nunley. We consider each in turn.

### A. Standard of Review

We review criminal sentences for both substantive and procedural reasonableness. *Gall v. United States*, 552 U.S. 38, 51 (2007). Nunley's argument concerning the adequacy of the court's explanation for the variance raises a procedural reasonableness challenge. *See id*. We normally review procedural reasonableness questions for abuse of discretion, but because Nunley did not raise this objection at the sentencing hearing, plain-error review applies. *United States v. Freeman*, 640 F.3d 180, 186 (6th Cir. 2011); *United States v. Bostic*, 371 F.3d 865, 872-73 (6th

Cir. 2004). To establish plain error, Nunley must show that 1) there is error, 2) it was clear and obvious, 3) it affected his substantive rights, and 4) it seriously affected the fairness and integrity of the judicial proceedings. *United States v. Massey*, 663 F.3d 852, 856 (6th Cir. 2011).

Nunley's primary challenge is to the substantive reasonableness of his sentence. We consider such questions under the deferential abuse-of-discretion standard. *Freeman*, 640 F.3d at 185. "The essence of a substantive-reasonableness claim is whether the length of the sentence is 'greater than necessary' to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a)." *United States v. Tristan-Madrigal*, 601 F.3d 629, 632-33 (6th Cir. 2010). A sentence is substantively unreasonable "if the district court chooses the sentence arbitrarily, grounds the sentence on impermissible factors, or unreasonably weighs a pertinent factor." *United States v. Brooks*, 628 F.3d 791, 796 (6th Cir. 2011). We "take into account the totality of the circumstances, including the extent of any variance." *Gall*, 552 U.S. at 51. While a presumption of reasonableness is applied to a within-Guidelines sentence, a presumption of unreasonableness is not applied to a sentence outside the Guidelines. *Tristan-Madrigal*, 601 F.3d at 633. Our task is simply to determine whether the justification is sufficiently compelling to warrant the extent of the variance, taking into account the deference owed to the sentencing judge. *Id*. The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court. *Id*.

## B. Explanation of Variance

Nunley's procedural reasonableness challenge amounts to a general allegation that the district court did not explain why or how the Guidelines sentence was inadequate to meet the sentencing goals.

As Nunley correctly points out, a sentencing judge must acknowledge the Guidelines range and must state in open court its reasons for imposing a sentence, including its specific reasons for choosing a sentence outside the Guidelines range. 18 U.S.C. § 3553(c)(2); *United States v. Blackie*, 548 F.3d 395, 400-01 (6th Cir. 2008). The explanation should be adequate to allow for meaningful appellate review, and failure to explain a sentence can constitute error. *Blackie*, 548 F.3d at 400-01.

The sentencing transcript reveals that the court adequately explained its reasons for the sentence, including its specific reasons for imposing an upward variance of twelve months. The court expressly considered the following § 3553(a) factors: the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; the need to provide adequate deterrence; the need to protect the public; and the kind of sentence established by the Guidelines.

The court provided a lengthy explanation of its reasons for departing from the Guidelines. It repeatedly mentioned Nunley's history of violence, noting that his attempts to evade the police were violent and in keeping with his actions throughout his adult life, as evidenced by the information and presentence report. The court said that Nunley had played an integral role in the conspiracy, that he had a criminal history that "spans his entire adult life," and that he had the skills to run a successful business and yet "chooses to take the wrong path and destroy other people through drug trafficking." It concluded that Nunley had not truly accepted responsibility for his crimes and instead blamed everyone else. The court, therefore, determined that an above-Guidelines sentence was necessary to meet the sentencing factors under § 3553(a)(2)(B) and (C)—to "provide adequate deterrence" and "to protect the public." "[O]n balance, considering

all the factors, some of which are counted in the guideline calculations and some of which are not," the court determined that a "slight variance" of an additional twelve months was warranted.

We conclude that the court's explanation of the above-Guidelines sentence was adequate such that there has been no clear or obvious error.

## C. Factors Taken Into Account by the Guidelines

Nunley's first substantive challenge is that the court improperly considered factors that had already been incorporated into the Guidelines calculation. If a court relies on factors it may not properly consider, it abuses its discretion. *United States v. Hunt*, 521 F.3d 636, 649 (6th Cir. 2008). Certain factors such as race, sex, national origin, creed, religion, or socio-economic status may never be taken into account, and certain other factors are discouraged because they are ordinarily not relevant to the sentencing question. *United States v. Crouse*, 145 F.3d 786, 789-90 (6th Cir. 1998); *see also* USSG § 5H1.10. However, the Sentencing Guidelines are advisory only and a court is specifically encouraged to consider departing from the Guidelines if it "finds that there exists an aggravating or mitigating circumstances of a kind, or to a degree, not adequately taken into consideration" by the Guidelines. 18 U.S.C. § 3553(b); USSG § 5K2.0; *see United States v. Booker*, 543 U.S. 220, 264-65 (2005). We discern no abuse of discretion in the court's consideration of the allegedly impermissible factors.

Pointing to the court's statement that Nunley has an "extensive criminal history" and that "if anything, his criminal history score is a bit low compared to his conduct, which spans his entire adult life," Nunley first argues that the court justified the increase based on information that had already been taken into account in the statutory minimum and the resulting Guidelines sentence. Read in context, however, it is apparent that the court was expressing its disagreement with letters from Nunley's family saying that he was a caring and generous person with good

moral character. The court's statements, moreover, were part of its larger discussion of the need for deterrence and protection of the public based on Nunley's history of violence and his role in the offense, all of which are proper considerations under § 3553(a). The court's language does not suggest any an additional sentence based solely on Nunley's criminal history.

The same is true of Nunley's allegations regarding the court's discussion of his attempt to evade police. Noting that he received a two-point increase under USSG § 3C1.2 because he created a substantial risk of death while fleeing from law enforcement, Nunley argues that the court considered the same conduct a second time when it made the following statements: "[H]e attempted to evade police and engaged in very serious behavior . . . [and] this is really not unique for this defendant. This is in character in keeping with the manner in which he has conducted himself throughout his adult life." This language reveals only that the court considered how the most recent conduct fit into Nunley's longer-term pattern of behavior. Moreover, these statements were made in support of the court's larger discussion explaining why Nunley's history of violence and criminality suggest the necessity of a higher sentence for deterrence and protection of the public.

Nunley next argues that the court's statement that he "has not accepted responsibility for his actions" was inconsistent with its decision to grant the Government's motion for a three-point reduction for acceptance of responsibility. The court, however, accepted the Government's motion and calculated the Guidelines before hearing Nunley's own statement assigning blame to the Government and to his co-conspirators but not to himself. The court then made the allegedly objectionable statement when considering the § 3553(a) sentencing factors, noting that "quite frankly, I'm a bit surprised that the government would be moving for the third level of acceptance credit, but it doesn't affect the guidelines range in this case," presumably referring to

the statutory minimum. We see no inconsistency amounting to an abuse of discretion in the court's logic.

The record establishes that the court considered the Guidelines range and all of the § 3553(a) factors, "some of which are counted in the guideline calculations and some of which are not," and determined that "on balance," a slight upward variance was warranted. This careful consideration of the § 3553(a) factors "'is just the sort of balancing a sentencing court should be doing.'" *United States v. Brinley*, 684 F.3d 629, 638 (6th Cir. 2012) (quoting *United States v. Paull*, 551 F.3d 516, 529 (6th Cir. 2009)) (holding that the district court did not err in imposing an upward variance where the Guidelines range failed to capture the severity of the offense, length of the scheme, number of victims affected, and the need for deterrence).

## D. Factors Favorable to Nunley

Finally, Nunley argues that the district court improperly failed to consider the facts that he agreed to a monetary forfeiture of $1,230,000, that he had continued to pay child support despite his incarceration, and that the Government "duped him" and "violated the spirit" of the plea agreement by using his real estate to satisfy the money forfeiture. The court did not expressly consider the forfeiture agreement or child support payments as favorable factors, but it is not obligated to provide a rote listing of all facts presented to it. *United States v. Collington*, 461 F.3d 805, 809 (6th Cir. 2006). The plea agreement, moreover, was considered in the court's related discussions regarding acceptance of responsibility. Family responsibilities are not ordinarily relevant to a departure consideration, and any consideration based on them must take into account the seriousness of the offense. USSG § 5H1.6, cmt. 1(A)(i). As for Nunley's claim that the court should have imposed a more lenient sentence because the Government "duped

him," the court did not abuse its discretion by rejecting this on the facts or by considering the argument as evidence of Nunley's failure to accept responsibility.

### III.    CONCLUSION

For the reasons explained above, we **AFFIRM** Nunley's sentence.