**NOT RECOMMENDED FOR PUBLICATION**
**File Name:  17a0040n.06**

| | | |
|---|---|---|
| **UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT** | | **FILED** Jan 18, 2017 DEBORAH S. HUNT, Clerk |

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| WILLIE L. MONROE, | ) | DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |
| | ) | |

**BEFORE:**    **MERRITT, MOORE, and STRANCH, Circuit Judges.**

**JANE B. STRANCH, Circuit Judge.**    Willie Monroe pleaded guilty to attempted robbery and brandishing a firearm during a crime of violence, in violation of 18 U.S.C. §§ 1951(a) and 924(c), respectively.  He was sentenced to 96 months for Count 1, a 57-month upward variance from the Guidelines range, and 84 months for Count 2.  In this appeal, Monroe challenges the length of his sentence.  For the following reasons, we **AFFIRM** Monroe's sentence.

## I.    BACKGROUND

On September 23, 2014, Willie Monroe and two others attempted to rob a Family Dollar store in Cleveland Heights, Ohio.  Monroe carried a firearm during the attempted robbery, which he brandished at the store employees.  During the incident, one of the store employees ran to an office in the rear of the store, where he called 911.  Monroe and the others chased another

employee through the store, until the employee ran out a back door and hid in an alley. Monroe and his co-conspirators left the store without taking any money or merchandise. Monroe was arrested on October 1, 2014 pursuant to a warrant for failure to appear in a different case. An Indictment was filed for the offense in the instant case on November 18, 2014.

Monroe pleaded guilty to one count of interference with commerce by robbery and aiding and abetting, in violation of 18 U.S.C. § 1951(a), and one count of brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). Under the plea agreement, the parties agreed that the applicable offense level was 22: 20 points for the base offense level, plus 2 points for physical restraint of a person to facilitate the commission of the offense under § 2B3.1(b)(4)(B) of the Guidelines. The Government agreed to recommend a three level reduction based on Monroe's acceptance of responsibility, provided that he continue to accept responsibility pending sentencing. In the plea agreement, Monroe agreed to waive his right to appeal except as to any sentence exceeding the maximum of the Guidelines imprisonment range. The parties contemplated cooperation and intended to address the value of that cooperation at sentencing.

The Presentence Investigation Report (PSR) recommended an offense level of 17, following a three-level reduction for acceptance of responsibility, and a Criminal History Category VI for Count 1, with a Guidelines range of 51-63 months. The Guideline sentence for Count 2 was 84 months. This calculation omitted the two-level enhancement for physical restraint of a person in facilitation of the offense, as included in the plea agreement.

The initial sentencing hearing was held on September 30, 2015. The district court noted the PSR's recommended offense level of 17 and agreed with the Government that the § 2B3.1(b)(4)(B) enhancement applied, raising the offense level to 19. At this point, the

Government notified the court that it had received information from officials at Lake County Jail, where Monroe was housed, alleging that Monroe had attempted to escape. The Government stated that this information affected its substantial-assistance recommendation. Monroe denied that he was making an escape attempt, and also argued that the value of his substantial assistance merited a full five-level reduction as originally contemplated by the parties. In response to the information presented, the court recessed the hearing for the parties to investigate the matter at the jail further, but noted that Monroe should be on notice for a "possible upward departure" for obstruction of justice or "consideration of an upward variance."

The court reconvened the sentencing hearing on October 21, 2015. The Government called Detective John Kelley of the Lake County Sheriff's Office to testify to the incident. Kelley was called to the jail to investigate an allegation of assault made by Monroe. While searching Monroe's cell as part of this investigation, Kelley found damage to the window, including "pry marks" on the frame and what he characterized as "gouge marks," as well as a "shower grate that was wrapped in wax paper." Kelley suspected that these were indications of a possible attempt to escape. When Kelley questioned Monroe about the window and shower grate, Monroe told him that he was filing it down to use as a weapon to defend himself from other inmates. Kelley also testified that Monroe's prison file contained notes reflecting Monroe's concern for his safety, fears about other inmates, and requests to be removed from the general population.

The district court ultimately determined that the evidence did not meet the standard of proof necessary to impose the upward adjustment for obstruction of justice for an attempted escape. After applying the Government's recommended three-level reduction for substantial assistance, the court determined that Monroe's adjusted offense level was 16 with a Criminal

History Category VI, which corresponded to a 46-57 month Guidelines range for Count 1 in addition to 84 months for Count 2. The court ultimately imposed a term of 96 months for Count 1, an upward variance of 57 months, resulting in a total term of 180 months.

In making this determination, the court reviewed the § 3553(a) factors, highlighting the "seriousness of this particular conduct in this particular offense," which the court called a "terrifying, strong-armed robbery, threatening victims with a firearm." The court also indicated that though Monroe did not qualify as a career offender under the Sentencing Guidelines, it found that Monroe's history and characteristics, including his previous juvenile and adult convictions, made him a "career offender by any other sense of the word or by any other interpretation." Though acknowledging Monroe's traumatic childhood, including an early exposure to drugs and violence, as well as his employment, drug abuse, and family circumstances, the court concluded that the sentence was appropriate "for the protection of the public" as Monroe "pose[d] a significant risk to society because of his violent nature." The district court determined that any sentencing disparities between Monroe and defendants with similar records and conduct would be triggered by *Johnson v. United States*, 135 S. Ct. 2551 (2015), where the Supreme Court invalidated the residual clause of the Armed Career Criminal Act, 18 U.S.C. § 924(e), which is identical to the residual clause in the Career Offender guideline, § 4B1.1. The district court also stated that even the 180 month sentence may have been insufficient in light of Monroe's record and that if not for his cooperation with the Government, his "sentence should easily have been in the 20-year plus range."

Monroe appeals his sentence, and argues that the court abused its discretion in imposing a 57-month upward variance, which he states is substantively unreasonable. Monroe argues that: the district court improperly considered factors that had already been incorporated into the

Guidelines calculation; and, the court's determination that the variance was necessary to counter disparities between Monroe and defendants subject to the ACCA's residual clause before *Johnson* was itself an unwarranted disparity in violation of § 3553(a)(6).

## II.    ANALYSIS

We review the substantive reasonableness of a district court's sentence for an abuse of discretion. *United States v. Gall*, 552 U.S. 38, 51 (2007). "The essence of a substantive-reasonableness claim is whether the length of the sentence is 'greater than necessary' to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a)." *United States v. Tristan-Madrigal*, 601 F.3d 629, 632-33 (6th Cir. 2010). Under this deferential standard, a sentence is substantively unreasonable if "the district court chooses the sentence arbitrarily, bases the sentence on impermissible factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Cochrane*, 702 F.3d 334, 345 (6th Cir. 2012) (quoting *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008)). We examine "the totality of the circumstances, including the extent of any variance," and recognize that "a major departure should be supported by a more significant justification than a minor one." *Gall*, 552 U.S. at 50-51. Though a Guidelines-range sentence is "presumed reasonable, a sentence outside the Guidelines range is not presumed unreasonable." *United States v. Elmore*, 743 F.3d 1068, 1072 (6th Cir. 2014) (quoting *United States v. Christman*, 607 F.3d 1110, 1118 (6th Cir. 2010)). The question before us is whether the district court's justification is "sufficiently compelling to warrant the extent of the variance, taking into account the deference owed to the sentencing judge." *United States v. Nunley*, 559 F. App'x 470, 473 (6th Cir. 2010). The fact that we "might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Gall*, 552 U.S. at 51.

Monroe first argues that the court's stated rationale for the upward variance improperly double-counted factors already incorporated into the appropriate guideline range. Specifically, Monroe asserts that the court put undue weight on his criminal history without accounting for his changed circumstances, such as his employment or cooperation with law enforcement, or other mitigating factors from Monroe's troubled past. This evaluation of the § 3553(a) factors, Monroe argues, focused on one sentencing factor to the exclusion of others.

At the outset, we note that the variance in this case is substantial, 70% above the Guideline range. *See United States v. Stoutermire*, 516 F. App'x 583, 586 (6th Cir. 2013) (finding that a variance of approximately 50% greater than the end of the guidelines range was "substantial"). In its justification, the court focused primarily on the seriousness of the offense, the need to protect the community, and the need for deterrence, all of which are proper considerations under § 3553(a). *See Nunley*, 559 F. App'x at 474; *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008). The court particularly highlighted Monroe's six juvenile and eleven adult convictions, including multiple robbery, firearm and drug convictions, and prior periods of incarceration that had not deterred Monroe from subsequent criminal activity. The court stated its belief that this history of violence and continued pattern of offenses required a lengthy sentence "for the protection of the public [and] adequate deterrence."

Contrary to Monroe's assertions, the record shows that the court also considered other § 3553(a) factors, including his history, characteristics, and cooperation with the Government, but determined that a substantial variance was necessary. The court's evaluation did not improperly double-count factors already calculated into the Guidelines range, as Monroe alleges, but rather reviewed its considerations in balancing the factors under § 3553(a). *See United States v. Farrow*, 198 F.3d 179, 193 (6th Cir. 1999) (finding that "impermissible 'double counting'

occurs when precisely the same aspect of a defendant's conduct factors into his sentence in two separate ways," such as by using the conduct to establish both an elevated base offense level and a four-level enhancement under the Guidelines).  Though we may have performed this balance differently, that is not sufficient to find that the district court abused its discretion in imposing an upward variance.

Monroe also argues that the district court "inappropriately concerned itself with changes in Supreme Court jurisprudence when considering disparities between Monroe's sentence and those of similarly situated defendants."  Monroe asserts that the court's sentence itself created such a disparity, as the court failed to consider whether pre-*Johnson* sentences could be corrected through direct appeal or habeas review and that these "pre-*Johnson* sentences may . . . be lowered [while] Monroe's sentence would remain artificially elevated."  But read in context, the court's statements do not reflect an attempt to impose a pre-*Johnson* sentence, which would be improper.  Instead, the statements reflect its determination that it did not find any disparities between Monroe's sentence and those imposed on similarly situated defendants, except for possibly those defendants previously sentenced as career offenders prior to the Supreme Court's decision.  The court's statement makes clear that it understood Monroe's sentence as lower than these pre-*Johnson* sentences.  Indeed, the preliminary PSR set Monroe's base offense level at 32 under the career offender Guideline, which was subsequently changed to 20 in the final PSR following the Supreme Court's decision in *Johnson*.  The court acknowledged that Monroe is "not an armed career in the words of the guidelines or the sentencing statute," but stated its belief that he was a "career offender by any other sense of the word or by any other interpretation."  This does not reflect an attempt to mitigate the disparity between Monroe's sentence and pre-*Johnson* sentences, nor create a disparity between Monroe and other defendants sentenced post-

*Johnson*.  Rather, this statement highlights the court's determination that the circumstances of Monroe's offense, as well as his history of criminality, called for a lengthy sentence.  We do not find that the court abused its discretion, and hold that Monroe's sentence is not substantively unreasonable.

### III.     CONCLUSION

For the reasons explained above, we AFFIRM Monroe's sentence.