NOT RECOMMENDED FOR PUBLICATION
File Name: 19a0423n.06

No. 18-1504

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Aug 14, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| LIVERTIS RILEY, IV, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE:    BATCHELDER, ROGERS, and THAPAR, Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge**.  Livertis Riley is a previously convicted felon who was convicted by a jury of possessing a firearm in violation of 18 U.S.C. § 922(g).  At the sentencing hearing the government asked for a sentence at the top of the Guidelines range and mentioned Riley's misconduct in prison while awaiting trial to rebut Riley's assertion that he was a changed man.  The district court considered Riley's lack of a clean prison record, along with several other factors, when determining Riley's within-Guidelines sentence.  Riley contested the accuracy and reliability of some of those prison violations and appeals his sentence claiming that his sentence is procedurally and substantively unreasonable because the district court considered his contested and unsubstantiated prison record.  We disagree, and accordingly, affirm.

**I.**

In 2014, police in West Virginia issued an arrest warrant for a convicted felon and Michigan resident, Livertis Riley, in connection with a suspected armed robbery of a residence.

On October 14, 2014, FBI agents in Detroit were alerted to the arrest warrant and conducted a search for Riley. The next day, having ascertained his likely residence, FBI agents staked out the house and saw Riley enter and exit. After confirming his presence, the agents obtained a search warrant to enter the house and arrest him. The agents knocked on the front door and announced their presence, but, receiving no response, breached the front door and cleared every room in the house except a locked bedroom. Agents heard noise inside the bedroom and announced their presence again. After a brief standoff, two men, Riley and Michael Murray, came out and surrendered. Seeing boxes of ammunition inside the room, the agents obtained another warrant to thoroughly search the house for narcotics and weapons. The agents found two semi-automatic handguns, four semi-automatic rifles, over 300 rounds of ammunition, and two drum magazines inside the bedroom, but no drugs or weapons anywhere else inside the house.

As previously convicted felons, Riley and Murray were indicted for possession of firearms in violation of 18 U.S.C. § 922(g).[1] Murray cooperated with the prosecution and testified against Riley, confirming that Riley lived in the house and owned the firearms. Four witnesses presented by Riley testified that he lived at another location and that the firearms were owned by Murray. The property owner of that other location testified that Riley did not live there. The jury convicted Riley. At sentencing, the district court imposed an obstruction-of-justice enhancement based on a finding that Riley had suborned perjury from the four witnesses.[2] The district court found that the Guideline range was 87–108 months and sentenced Riley to 90 months.

Riley appealed and this court affirmed his conviction but vacated the sentence and remanded for resentencing, rehearing, and factual finding on the elements of the obstruction

---

[1] Making it unlawful for a convicted felon "to ship or transport in interstate of foreign commerce, or possess in or affecting commerce, any firearm or ammunition . . . ." 18 U.S.C. § 922(g)(1).

[2] One witness had already been indicted for false testimony by this time.

enhancement. *United States v. Riley*, 685 F. App'x 390 (6th Cir. 2017). At resentencing, the district court[3] found that the record was insufficiently clear to support a finding that Riley's witnesses had committed perjury or that Riley had induced them to do so. Therefore, the district court did not apply the obstruction enhancement and found that the Guideline range was 70–87 months. In his sentencing memorandum, Riley had asked for a downward variance, arguing that his only other conviction had been years ago when he was 15 years old and since then, "maturity has replaced impulsiveness," he had a "change of lifestyles," and was "a changed man." At the resentencing hearing, Riley stated that, "it's like, I wasn't a monster out there, you know, I just made some mistakes," although he did concede that, "I'm not going to sit here and tell you, okay, I'm not going to do this or I'm going to live life this way 'cause there's nothing certain in life."

The government asked for the maximum sentence within the Guidelines range. It noted Riley's history of crime, the violent nature of that crime, and raised—for the first time—Riley's "series of disciplinary violations while in the Bureau of Prisons." Those included "insolence toward a staff member, possession of a weapon and fighting, all in 2016" and "several that are to be adjudicated from February of 2018 where he possessed a dangerous weapon and was fighting." Riley later contested some of those violations saying that some were incorrectly on his prison disciplinary record, and some had yet to be adjudicated, but he conceded that at least the "fighting ticket" was accurate.

After considering all the factors relevant to sentencing, the district court imposed a sentence of 87 months. The court noted several factors that stood out with regard to the need for a sentence to deter future behavior from similar criminals and the need to protect others from Riley: the "disturbing amount of firepower" that was found in Riley's bedroom, and the "standoff [that]

---

[3] Due to the former district court judge's retirement, a new judge heard the case at resentencing.

lasted a while" with police when he was found. Further the court noted Riley's discharge of a weapon as part of the West Virginia robbery, a crime which the court described as involving "a very chilling set of circumstances." Finally, the court remarked that "[Riley's] time in prison has not been without incident." After Mr. Riley contested some of those prison violations, the district court clarified its statements:

> [T]he fact that it's not a clean record is all that I was taking into account. That's all I was referencing. I wasn't basing my sentence on every allegation of misconduct, but it's apparent that there were at least some misconducts. That's all I was saying and I want the record clear on that.

On appeal, Riley claims that his sentence is procedurally and substantively unreasonable.

## II.

We review a sentence's procedural and substantive reasonableness for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Smith*, 516 F.3d 473, 477–78 (6th Cir. 2008). Although Riley's counsel did not object to the prison misconduct factor in the traditional *Bostic* format, the government concedes that his objection was "arguably enough" to preserve it for appeal.

## A.

Riley claims that the district court abused its discretion by relying on his prison disciplinary record when determining his sentence, thus rendering his sentence procedurally unreasonable. Since "no evidence was produced to show by a preponderance that the violations occurred," Riley argues, allegations of those violations were an impermissible factor upon which the district court relied.

When a district court "properly calculate[s]" the Guidelines range, considers the parties' arguments and the statutory sentencing factors, and "adequately articulates" its reasoning, a sentence within the Guideline range is presumptively reasonable. *United States v. Bolds*, 511 F.3d

568, 579–81 (6th Cir. 2007). When considering the factors relevant to a defendant, a sentencing court has wide latitude. Indeed, the Supreme Court continues to recognize "that 'both before and since the American colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law.'" *Pepper v. United States*, 562 U.S. 476, 488 (2011) (quoting *Williams v. People of State of N.Y.*, 337 U.S. 241, 246 (1949)). Sentencing courts have been permitted "to consider the widest possible breadth of information about a defendant [to ensure] 'that the punishment will suit not merely the offense but the individual defendant.'" *Pepper*, 562 U.S. at 488 (quoting *Wasman v. United States*, 468 U.S. 559, 564 (1984)). The United States Sentencing Guidelines reflect this tradition, stating:

> In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, *without limitation*, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law. *See* 18 U.S.C. § 3661.

U.S.S.G. § 1B1.4 (emphasis added). The scope of a sentencing court's inquiry includes post-conviction and post-sentencing behavior as well. *Pepper*, 562 U.S. at 491–92 (finding that post-sentencing conduct "may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider at sentencing" and that "post-sentencing conduct also sheds light on the likelihood that [a defendant] will engage in future criminal conduct, a central factor that district courts must assess when imposing a sentence").

There are, however, at least some limits on what sentencing courts may consider, and reliance on an impermissible factor renders a sentence, even one within the Guidelines range, procedurally unreasonable. *United States v. Cabrera*, 811 F.3d 801, 808–09 (6th Cir. 2016). For example, a defendant's race, sex, national origin, religion, or socio-economic status may not be a

factor in a court's sentencing decision. *United States v. Nunley*, 559 F. App'x 470, 474 (6th Cir. 2014). Furthermore, any information a district court considers in determining a sentence must have "sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a). This is the crux of Riley's claim.

Riley effectively concedes that his conduct in prison *could* be relevant but complains that no specific facts concerning his prison disciplinary record were entered as evidence, included in the pre-sentence report, or articulated in the government's brief. He denies that he was convicted of some of the violations mentioned by the government at the sentencing hearing and complains that violations yet to be adjudicated cannot be considered. For example, Riley cites *United States v. Blake*, 496 F. App'x 584, 587 (6th Cir. 2012), which held that "an arrest report *alone* is not sufficient." 496 F. App'x at 587 (emphasis in original).

Even so, Riley conceded during the resentencing hearing that some of the violations were accurate, specifically the "fighting ticket." And at the hearing the district court specifically said that it "wasn't basing [the] sentence on every allegation of misconduct" but rather the overall lack of a "clean record" in prison. In fact, not only did Riley concede his lack of a completely clean record, he does not argue otherwise in his brief before this court, and his lack of a clean prison record was merely one among several other aggravating factors the district court considered when evaluating Riley's assertion that he was a "changed man" deserving of a more lenient sentence.

A sentencing court may rely on post-sentencing conduct. *Pepper*, 562 U.S. at 491–92. It is clear from the record before us that, to the extent the court considered Riley's prison disciplinary record, the court relied only upon the uncontested prison disciplinary record marked by misconduct. We find no abuse of discretion here.

**B.**

Riley claims—in the alternative—that his sentence is substantively unreasonable. When a district court issues a sentence within the Guidelines range, it is entitled to a "rebuttable presumption" of substantive reasonableness. *United States v. Conatser*, 514 F.3d 508, 526 (6th Cir. 2008). To rebut this presumption, a defendant can show that the district court "placed too much weight on some of the § 3553(a) factors and too little on others in sentencing the individual." *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir.), *cert. denied*, 139 S. Ct. 264 (2018).

First, Riley argues that since the first sentencing judge had issued a sentence at the bottom of the originally higher Guideline range that included the obstruction enhancement, after removing the obstruction enhancement, the second sentencing judge should have sentenced him at the bottom of the new range. But Riley cites no legal authority for this proposition, and indeed, there is none. That Riley "would have preferred that the court had performed [the weighting of factors] differently is insufficient to show that his sentence was substantively unreasonable." *United States v. Hammonds*, 468 F. App'x 593, 600 (6th Cir. 2012).

Next, Riley argues that because his prison disciplinary record is an impermissible factor for the court to consider, by considering it, the district court denied him due process. Hence, Riley contends, the sentence is substantively unreasonable. But the "consideration of an impermissible factor is more properly considered a procedural, not substantive, error." *United States v. Cabrera*, 811 F.3d 801, 809 (6th Cir. 2016). And as we have already explained, this argument is meritless.

Finally, Riley argues that his sentence overrepresents his criminal history and does not adequately take into account his upbringing and personal circumstances, and hence, the sentence at the top of the new range is not justified. The record simply does not support this claim.

The district court did not abuse its discretion.

### III.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.