NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0379n.06

No. 10-6498

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Apr 06, 2012*

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,      )
                                 )

     **Plaintiff-Appellee,**        )
                                 )    **ON APPEAL FROM THE UNITED**

v.                                )    **STATES DISTRICT COURT FOR THE**
                                 )    **WESTERN DISTRICT OF TENNESSEE**

STEPHEN LYNN HAMMONDS,     )
                                 )

     **Defendant-Appellant.**      )

**Before: CLAY and GIBBONS, Circuit Judges, and KORMAN, District Judge.**[*]

**JULIA SMITH GIBBONS, Circuit Judge.** After being caught in an undercover FBI investigation, defendant-appellant Stephen Hammonds pled guilty to several child-pornography-related offenses and to a charge of enticement of a minor. The district court sentenced Hammonds to a lifetime term of imprisonment, which was the sentence recommended under the United States Sentencing Guidelines. On appeal, Hammonds challenges the procedural and substantive reasonableness of his sentence. For the reasons that follow, we affirm the sentence imposed by the district court.

I.

This case arises out of an investigation conducted by the FBI's Memphis Crimes Against Children Task Force into complaints that sexually explicit images of minors were being posted to

---

[*]The Honorable Edward R. Korman, United States District Judge for the Eastern District of New York, sitting by designation.

the website "Mbuzzy.com." In June 2009, after creating a profile on the website in which she posed as a thirteen-year-old female, Task Force Officer Melissa Mahan's undercover online persona received a request to be added as a friend from an Mbuzzy.com user with the screen name "Tnxdtrucker." Tnxdtrucker also sent a message to Mahan's undercover profile that stated, "hi I just love young girls and your so sexy n hot in that bikini. id love to see more pics of you [sic]." Later, Tnxdtrucker sent another message to Mahan's undercover persona, asserting, "I love sex with young girls and if I can get one a young boy." When Mahan reviewed the profile of Tnxdtrucker, she discovered that he had posted a nonsexual image of a young girl sitting on a table. He stated that the girl in the image was his ex-stepdaughter and added further that he had touched her inappropriately.

From October through December 2009, FBI Agent Steven Lies, using a pair of undercover personas, also communicated with Tnxdtrucker on Mbuzzy.com and via the Yahoo Instant Messenger Service. Lies posed as both a 49-year-old man with the screen name "rivercityman55" and as rivercityman55's 10-year-old daughter. In communications with the persona of rivercityman55's 10-year-old daughter, Tnxdtrucker told her that he could not wait to see her, kiss her, and touch her, and he sent pictures of things that he wanted her to wear. Tnxdtrucker was more graphic when communicating with rivercityman55. Tnxdtrucker told this purported 49-year-old father that he started inappropriately touching his ex-stepdaughter when she was eleven years old and had sexual intercourse with her when she was fourteen. He also expressed in explicit terms his desire to meet rivercityman55's daughter and have oral sex and sexual intercourse with her. Tnxdtrucker and rivercityman55 agreed to meet at a motel in Jackson, Tennessee for this purpose.

Also, in November 2009, Txndtrucker sent rivercityman55 several images of minors engaged in sexually explicit behavior, including some images that Txndtrucker claimed were of his ex-stepdaughter. He further revealed that he had other similar images on his phone and at his home.

Investigation revealed that Hammonds controlled the Mbuzzy.com profile using the screen name "Tnxdtrucker," and on December 14, 2009, federal law enforcement officers executed a search warrant at Hammonds's residence in Jackson, where they discovered approximately fifty computer image files depicting minors engaging in sexually explicit conduct. Hammonds, who was present during the search, was interviewed by Agent Lies and admitted to using the screen name of "Tnxdtrucker," engaging in electronic communications with "rivercityman55," and sending sexually explicit images of minors.

Hammonds was indicted and charged with interstate transportation of visual depictions of a minor engaging in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(1) (Count 1), receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2) (Counts 2 and 3), use of a facility and means of interstate commerce to persuade, entice, or coerce a minor to engage in sexual activity in violation of 18 U.S.C. § 2422(b) (Count 4), possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) (Count 5), and a forfeiture count pursuant to 18 U.S.C. § 2253 (Count 6). On May 21, 2010, Hammonds pled guilty to Counts 1 through 5 and agreed to the forfeiture under Count 6.

Following the guilty plea, a presentence investigation report ("PSR") was prepared. It indicated that Hammonds's adjusted offense level was 42 for the child pornography counts (Counts

1, 2, 3, and 5) and that his adjusted offense level was 38 for the enticement count (Count 4). Although Hammonds was convicted in 1998 of statutory rape and incest, based on a number of sexual encounters between Hammonds and his ex-stepdaughter when she was between the ages of thirteen and fifteen, this conviction did not result in any criminal history points for the purposes of the PSR, but it did result in the application of additional enhancements to his offense level for the child pornography counts. Hammonds's total offense level was 46, and his lack of criminal history points placed him in a criminal history category of I. This score resulted in a recommended sentence of life imprisonment.

Hammonds filed a sealed position paper regarding the PSR in which he argued that a concurrent sentence of 240 months imprisonment for each count of conviction followed by a lifetime term of supervised release would be sufficient but not greater than necessary to satisfy the factors provided under Section 3553(a). *See* 18 U.S.C. § 3553(a). Hammonds emphasized the fact that he admitted to his crimes, accepted responsibility, and entered a timely guilty plea. Hammonds also noted that after FBI agents discovered several photographs of a minor female named "Chelsea Marie" on his laptop, they were able to trace the photographs to their source—a website owned by James Frazee. This investigation eventually led to Frazee's arrest and conviction on a charge of sexual exploitation of children. Hammonds cooperated with the Frazee investigation in a minor way—explaining how he acquired the images—and implied that the district court should factor this cooperation favorably into his sentencing.

Hammonds also argued in his position paper that although his 1998 felony conviction for incest and statutory rape did not give him any criminal history points, it resulted in a 10-level enhancement to his offense level under U.S.S.G §§ 2G2.2(b)(5) and 4B1.5(b)(1). He argued that the purpose of these enhancements was to punish and deter recidivists. Hammonds then pointed to the results of an evaluation performed by a psychologist, Dr. John Hutson, in which Dr. Hutson concluded that Hammonds posed a only medium-low to moderate risk for recidivism, to argue that a lesser sentence would be sufficient. In his report Dr. Hutson also noted that there are "legitimate questions involving [the] efficacy" of the techniques he used for assessing recidivism in sexual offenders when they are applied to pornography offenses as opposed to sexual contact offenses, but that he used these techniques because "there are no currently valid assessments involving pornography convictions."

At the sentencing hearing, defense counsel addressed the arguments made in the position paper. He argued that it was odd that Hammonds potentially would be punished more severely under the Guidelines for the child pornography charges than for the enticement charge, which he asserted was the more egregious behavior. Defense counsel also reemphasized that Dr. Hutson found Hammonds posed no greater risk of recidivism than a first-time offender. Therefore, he argued, the offense level enhancements resulting from Hammonds's prior incest conviction were not necessary under the circumstances, especially considering that Hammonds would be over sixty years old upon his release from prison if the court granted the requested sentence of 240 months' imprisonment and would still be subject to a term of lifetime supervision.

In response, the government noted that Hammonds was diagnosed with pedophilia, which it asserted was a condition that could not be cured. The government also argued that Hammonds, after being convicted and serving time for incest and statutory rape of his minor ex-stepdaughter, bragged about sexually exploiting his ex-stepdaughter to Agent Lies's undercover persona and sought out another minor to exploit. The government took the position that a sentence that followed the Guidelines recommendation—life imprisonment—was appropriate.

After hearing from Hammonds, the district court indicated that one of its primary concerns was "whether or not there [was] a likelihood that [Hammonds] will recidivate." The court found that Hammonds, despite his professed intent to cease engaging in the conduct for which he was convicted, would continue to pose a risk to children. After expressing disgust at the comments attributed to Hammonds in the PSR, the court went on to state: "because of your actually having acted out this conduct with a child, I believe that you are particularly dangerous, and I believe that we're beyond the phase of trying to rehabilitate, you simply have to be separated [from] society and the vulnerable children who might be at risk." The court acknowledged that it had to consider the mental health issues involved in this case, and stated that "[i]f this were a first occurrence, . . . I might say that there is no track record on which to base anything, but you know the best predictor of future behavior is past behavior. In your case it's not good, not good." The district court ultimately concluded that a sentence within the Guidelines was appropriate and sentenced Hammonds to a term of life imprisonment.

II.

On appeal, Hammonds argues that his sentence of life imprisonment was greater than necessary to comply with the sentencing factors set forth in 18 U.S.C. § 3553(a). He asserts that his sentence was both procedurally and substantively unreasonable. "Post-*Booker*, we review a district court's sentencing determination under a deferential abuse-of-discretion standard, for reasonableness." *United States v. Presley*, 547 F.3d 625, 629 (6th Cir. 2008) (internal quotations omitted). We review the district court's sentencing determination for both procedural and substantive reasonableness. *See Gall v. United States*, 552 U.S. 38, 51 (2007). A district court commits reversible procedural error, for instance, by "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Id.*

Review of the substantive reasonableness of a sentence takes into account the totality of the circumstances. *Id*. A sentence may be substantively unreasonable, for example, if the district court selects it arbitrarily, bases it on impermissible factors, fails to consider pertinent Section 3553(a) factors, or gives an unreasonable amount of weight to any pertinent factor. *United States v. Webb*, 403 F.3d 373, 385 (6th Cir. 2005). When a sentence falls within the Guidelines range, a rebuttable presumption of reasonableness applies. *United States v. Vonner*, 516 F.3d 382, 389–90 (6th Cir. 2008) (*en banc*). "The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Gall*, 552 U.S. at 51.

A.

Hammonds challenges the procedural reasonableness of his sentence by arguing that the enhancements under the child pornography provision of the Sentencing Guidelines, U.S.S.G. § 2G2.2, are inherently flawed and that their application in his case led to a sentence that was much greater than necessary. In support of his claim, he points to *United States v. Dorvee*, in which the Second Circuit asserted that the child pornography Guidelines provisions are "fundamentally different" from most other provisions because it was not formulated through an empirical approach based on past sentencing practices like most other Sentencing Guidelines but, at the direction of Congress, was amended several times by the Sentencing Commission, which recommended harsher penalties each time. 616 F.3d 174, 184 (2d Cir. 2010). The *Dorvee* court cautioned that "unless applied with great care, [U.S.S.G. § 2G2.2] can lead to unreasonable sentences that are inconsistent with what § 3553 requires." *Id*.; *see also United States v. Tutty*, 612 F.3d 128, 132 (2d Cir. 2010) (noting the additional concern raised in *Dorvee* that many of the child pornography enhancements under the Guidelines apply in virtually every case).

Likewise, this court recognized in *United States v. McNerney*, 636 F.3d 772, 777 (6th Cir. 2011), that "[d]espite Congress' significant purpose in prohibiting the dissemination of child pornography, some courts and commentators have questioned the wisdom of the congressionally-directed Child Pornography Sentencing Guideline because they were the product of Congressional mandate rather than the Commission's preferred systematic, empirical approach."

*See also United States v. Brooks*, 628 F.3d 791, 800 (6th Cir. 2011) (stating that several district courts have rejected sentencing ranges produced by § 2G2.2 after concluding that the provision "is based solely on legislative enactments designed to increase the length of sentences rather than being based on empirical data").

But while this court has acknowledged the unusual source and history of § 2G2.2, it has also held that "the fact that a district court *may* disagree with a Guideline for policy reasons and *may* reject the Guidelines range because of that disagreement does not mean that the court *must* disagree with that Guideline or that it *must* reject the Guidelines range if it disagrees." *Id.* (emphasis in original). A district court is not required to consider an argument that because a guideline was promulgated without adequate deliberation, it should not be applied in *any* case, since such a requirement would improperly shift the focus "from the defendant's conduct to the 'legislative' history of the guidelines." *Id.* (quoting *United States v. Aquilar-Huerta*, 576 F.3d 365, 368 (7th Cir. 2009)); *see also McNerney*, 636 F.3d at 778 (noting that "it is unquestionably Congress' constitutional prerogative to issue sentencing directives" and that Congress has the power to fix sentences for federal crimes).

While a district court is permitted to deviate from a Guidelines range based on a policy disagreement, it is not required to do so. *United States v. Janosko*, 355 F. App'x 892, 895 (6th Cir. 2009). It follows that a district court is also not required to deviate from the Guidelines range when it *agrees* with the Guidelines provision. *See id.* (stating that if a district court does not disagree with the Guidelines and adjust a sentence accordingly, the appellate court "will not second-guess their

decisions under a more lenient standard simply because the particular Guideline is not empirically-based") (quoting *United States v. Mondragon-Santiago*, 564 F.3d 357, 367 (5th Cir. 2009)).

Here, after considering the circumstances of the case and the application of § 2G2.2, the district court specifically concluded that "I believe that the guidelines in this case get it right, I believe that the guideline does offer an appropriate recommended sentence." The district court was not required to credit Hammonds's policy-based argument that his sentence—in which he was punished more severely for the child pornography offenses than the enticement offense—indicates that something is "gravely askew" with the child pornography Guidelines provision. It was not an abuse of discretion for the district court to choose to follow the recommended sentence under the Sentencing Guidelines. The district court properly calculated the Guidelines range, did not treat the Guidelines as mandatory, reviewed the pertinent Section 3553(a) factors—including the seriousness of the crime, the need for deterrence to protect the public, and Hammond's mental health needs, did not rely on any clearly erroneous facts in selecting the sentence, and adequately explained the sentence chosen, which was within the Guidelines range. Accordingly, the imposed sentence was procedurally reasonable. *See Gall*, 552 U.S. at 51.

## B.

Hammonds also challenges the substantive reasonableness of his sentence. He argues that the district court gave an unreasonable amount of weight to his criminal history and the seriousness of his offense. Hammonds further asserts that the district court failed to give the proper weight to

the mitigating factors in his case, including the fact that the PSR assigned him no criminal history points, the fact that Dr. Hutson's evaluation concluded that Hammonds only posed a medium-low to moderate risk of recidivism, and the fact that Hammonds would be approximately sixty years old upon release if the court granted his requested twenty-year sentence.

The record belies Hammonds's characterization of his sentence. First, Hammonds's sentence is within the Guidelines and is thus presumed to be reasonable on appeal. *United States v. Paull*, 551 F.3d 516, 529 (6th Cir. 2009). Also, the district court stated that it believed Hammonds was sincere when he said he did not intend to engage in this conduct again, but it also concluded that he may not be able to fully control his impulses, that Hammonds had not shown himself to be a person who is going to abide by the law, that he posed a risk to children, and that he was particularly dangerous since he had already acted on his impulses and engaged in sexual conduct with a child in the past. It was not unreasonable for the district court to decide to give little weight to Dr. Hutson's opinion that Hammonds posed only a medium-low to moderate risk of recidivism, especially considering that Dr. Hutson acknowledged that there were legitimate questions about the efficacy of the assessment techniques he used.

Hammonds also cites a number of cases in which the defendants were convicted of child pornography or enticement offenses but received lighter sentences than life imprisonment, to argue that he too should have received a shorter sentence. *See United States v. Dubrowolski*, 406 F. App'x 11 (6th Cir. 2010); *United States v. Creary*, 382 F. App'x 850 (11th Cir. 2010); *United States v. Weller*, 330 F. App'x 506 (6th Cir. 2009). This argument, however, misses the point. The issue is

not whether some other, lesser sentence for Hammonds would have been reasonable; rather, it is whether the within-the-Guidelines sentence that Hammonds actually received was reasonable. The same reasoning applies to Hammond's reliance on *United States v. Martin*, 390 F. App'x 533, 538 (6th Cir. 2010), in which this court affirmed a downward variance based in part on the mitigating factor of the defendant's age, to argue that a shorter sentence was warranted. The issue is not whether Hammonds could have potentially received a variance based on the mitigating factors listed above, but rather, it is whether the sentence he actually received was reasonable.

The district court clearly considered Hammonds's position paper, considered the pertinent § 3553(a) sentencing factors, and arrived at a decision to adopt a sentence within the Guidelines. Contrary to Hammonds's assertions, the district court did consider the mitigating factors in the case, but found, appropriately and within its discretion, that concerns about the seriousness of the crime and the need to protect the public were paramount. Hammonds has not shown that the district court gave these factors disproportionate weight. *See United States v. Duane*, 533 F.3d 441, 453 (6th Cir. 2008) (upholding a within-Guidelines sentence as substantively reasonable over an objection that the court gave the Guidelines calculation disproportionate weight where "the district court clearly considered the § 3553(a) factors that it found most pertinent—namely the seriousness of the crime, the need for deterrence, and the Guidelines range"). The fact that Hammonds would have preferred that the court had performed this balancing differently is insufficient to show that his sentence was substantively unreasonable. *See United States v. Trejo-Martinez*, 481 F.3d 409, 413 (6th Cir. 2007) ("The mere fact that [the defendant] desired a more lenient sentence, without more, is insufficient

to justify our disturbing the reasoned judgment of the district court.").  Hammonds has failed to overcome the presumption of reasonableness afforded to his within-the-Guidelines sentence, and his sentence was substantively reasonable.

III.

For the reasons provided above, Hammonds has failed to establish that his sentence was procedurally or substantively unreasonable, and we affirm the sentence imposed by the district court.