**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 17a0171n.06

**Case No. 16-3293**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Mar 21, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| v. | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| DAVID VICKERS, | ) | |
| | ) | |
| Defendant-Appellant. | ) | O P I N I O N |

**BEFORE: KEITH, BATCHELDER, and McKEAGUE, Circuit Judges.**

**McKEAGUE, Circuit Judge.** David Vickers was convicted of distributing child pornography, enticing a minor to engage in sexual activity, and traveling in interstate commerce with the intent to engage in illicit sexual conduct, and was sentenced to life in prison. He now appeals his conviction and sentence, arguing (1) that the government violated his due process rights by unfairly targeting him as part of an undercover sting operation and inducing him to commit the above crimes; (2) that his trial counsel was ineffective for failing to raise the issue of his mental health and for ineptly attacking the government's key witness and lack of department protocols; and (3) that the district court's imposition of a life sentence was substantively unreasonable. For the following reasons, we affirm.

**I**

In mid-December 2014, David Vickers began communicating on the social media site "Experience Project" with a person he thought was a 29-year-old named "Traci Black," but who was in reality Special Investigator Miranda Helmick. Helmick was employed by the Cuyahoga County Prosecutor's Office and was a member of the Ohio Internet Crimes Against Children Task Force. Because Experience Project was known by Task Force members to be oriented toward "adult fetishes" and "sexually explicit conduct," Helmick created a profile on the site to attract and eventually apprehend individuals engaging in related illicit behaviors. R. 56, Trial Tr. at 81, PID 652. On December 12, 2014, a man named David Vickers sent her a "friend request." The two began chatting and Vickers' sadistic tendencies became apparent. Vickers admitted to setting up his Experience Project profile in order to "talk [to] teen girls," R. 58-3, Google Chats at 25, PID 1010, and Helmick took note of his membership in groups such as "I Want To Be A Pregnant Teen," "I Want To Be Bred," and "I Love Roleplaying," in the latter of which he posted the message, "Any girls up for some naughty young forced rp? Inbox me," App. R. 10, PSR at 4, PID 257. Recognizing that Vickers posed a threat to young children, Helmick set her undercover operations in motion.

Pretending to be Traci, Helmick explained to Vickers that she was on the site to "breed" her 13-year-old fictitious daughter "Katie," meaning that she was looking for an older man to have sex with Katie, impregnate her, and commit to a long-term relationship. Vickers immediately expressed an interest in this idea, stating "let me know if I can help" and "I am interested in doing this." R. 55, Trial Tr. at 28, 47, PID 432, 438. The conversations between Vickers and Traci continued, expanding to other text messaging applications, and Vickers soon admitted to many troubling—and illegal—behaviors. First, he stated that he enjoyed watching

child pornography videos—including one of a young girl being bound and forcefully raped and another of a child being raped while unconscious—as well as bestiality videos. He sent 27 of these videos to Traci. Second, in addition to viewing these videos, Vickers revealed that he had previously engaged in illicit sexual conduct with minors. He disclosed that he "did stuff with young girls before," R. 55, Trial Tr. at 51, PID 455, specifically referencing at least one such occasion where he had sex with a minor, approximately ten years of age, in a park while in college. Lastly, Vickers expressed his desire to continue engaging in this wrongful conduct by entering into a sexual relationship with Katie. This was demonstrated by Vickers' graphic explanation to Traci of how he planned to have sex with her daughter; his inquiries into whether Katie would be drunk or drugged and whether Traci would be in the room to watch; and the various other lewd sexual comments Vickers made in communications with Traci. *See, e.g.,* R. 55, Trial Tr. at 124, PID 528 ("If we meet in public first somewhere, you should make her wear a dress. So I can fondle her in the car on the way over.").

Soon, Vickers began texting with Katie directly—or rather, Helmick posing as Katie. In these conversations, Vickers asked Katie sexual questions and whether she enjoyed watching pornography. He explained his plans to have sex with her and "get [her] pregnant." R. 58-2, KIK App. Comms. at 10, PID 838. Vickers also sent Katie many explicit videos depicting minors engaging in sex with older men, telling her "[t]hat will be you in 2 weeks" and "I want to do that to you." *Id.* at 23, 135, PID 851, 963.

After enthusiastically discussing the possibility of a rendezvous for several weeks, on January 5, 2015, Vickers left his home in Virginia in the middle of the night and traveled to Ohio to meet Traci and Katie. Much to his surprise, when he arrived at their agreed-upon meeting place, Vickers was instead greeted by a team of police officers who took him into custody.

A grand jury indicted Vickers on three counts: Count 1, knowingly distributing videos containing visual depictions of a minor engaged in sexually explicit conduct, 18 U.S.C. § 2252(2); Count 2, enticing a minor to engage in illegal sexual activities, 18 U.S.C. § 2422(b); Count 3, traveling in interstate commerce with the purpose of engaging in illicit sexual conduct, 18 U.S.C. § 2423(b). Although Vickers initially intended to plead guilty, he ultimately went to trial and a jury convicted him on all counts. The statutory maximum sentences were 20 years on Count 1, life on Count 2, and 30 years on Count 3, and the Presentence Report indicated a guidelines imprisonment range of life. The trial court rejected Vickers' request for a downward variance and sentenced him to the statutory maximum on each count, resulting in the imposition of a life sentence. Vickers raises three arguments on appeal.

## II

First, Vickers claims that "the government manufactured a criminal" by engaging in outrageous conduct "shocking to the universal sense of justice" by inducing him to commit the child exploitative crimes for which he was convicted, thereby violating his Fifth Amendment due process rights. Vickers did not raise this claim in the district court, so we review for plain error. *See United States v. Al-Cholan*, 610 F.3d 945, 950 (6th Cir. 2010).

As an initial matter, whether the "outrageous government conduct" defense should even apply here is dubious. We have hesitated to recognize this defense when it actually "sounds in inducement" because defendants have attempted to use it to avoid having to disprove predisposition, which would otherwise be required if an analogous entrapment defense were asserted. *United States v. Amawi*, 695 F.3d 457, 483 (6th Cir. 2012) (concluding that a defendant "may not circumvent this restriction by couching [his] defense in terms of 'due process'") (internal quotation marks and citation omitted). And here, Vickers attempts to do precisely that,

characterizing what is essentially an entrapment defense as a due process violation by claiming that Helmick "improper[ly] induc[ed]" and "repeatedly provoked" him to engage in the illegal conduct at issue. Appellant Br. at 16. But Vickers waived any claim to an entrapment defense because he did not raise it below or in his brief on appeal.[1] *United States v. Williams*, 544 F.3d 683, 690 (6th Cir. 2008). And he should not otherwise be allowed to re-characterize his defense into one of a constitutional variety. *See United States v. Blood*, 435 F.3d 612, 629 (6th Cir. 2006) (explaining that the "outrageous government conduct" doctrine is "not available where the defense is based either on a theory of government inducement . . . or on a theory that the undercover officer's involvement in creating [the] crime was so significant that criminal prosecution violates due process") (internal quotation marks and citation omitted).

Nevertheless, even if we were to address the merits of Vickers' "outrageous government conduct" defense, we could not find that Helmick's actions were "conscience shocking" or rose to the level of egregiousness required to warrant reversal of his criminal conviction. *See United States v. Napier*, 787 F.3d 333, 341–43 (6th Cir. 2015). The essence of Vickers' argument is that he was really only interested in Traci all along, but that Helmick repeatedly baited him into pursuing a sexual relationship with Katie and berated him when he demonstrated hesitancy in following through. But the record refutes Vickers' version of events. From the very first day of communications between Vickers and Helmick, Vickers expressed interest in Katie. *See, e.g.,* R. 55, Trial Tr. at 33, PID 437 ("Do you have a picture—or pic of Katie?"). And this interest never subsided. *Id.* at 142, PID 546 ("Right now I want Katie LTR [long-term relationship]"; R. 58-3, Google Chats at 93, PID 1078 ("I actually really care for [Katie] and like her."). Furthermore,

---

[1] We note that any entrapment claim would have nevertheless failed since Vickers would be unable to prove that he was not predisposed to engage in illicit sexual behavior involving minors given the overwhelming evidence in the record indicating his pedophilic tendencies. Because the government "merely provided an opportunity [for Vickers] to commit [these] crime[s]" to which he was "already predisposed," an entrapment defense would have failed as a matter of law. *See United States v. Moore*, 916 F.2d 1131, 1136 (6th Cir. 1990).

Vickers' past behaviors—watching and distributing child pornography, "doing stuff" with young girls, and trolling the Internet for more innocent victims—indicated an undeniable fetish with young girls that predated his interactions with Helmick. Moreover, *even if* Vickers had developed an interest in Traci, that would not alter the fact that he was willing to coax a thirteen-year-old into having sex with him as the basis for forming such a relationship. Vickers' feelings for Traci do not mitigate his guilt for any of the crimes of which he was convicted.

Lastly, while it is true that Vickers appeared to second-guess coming to Ohio on a few occasions, this fact is only relevant to the interstate travel count, which did not carry the life sentence. And although Helmick pretended to act disappointed when Vickers indicated he might not travel, *see, e.g.,* R. 58-3, Google Chats at 82, PID 1067 ("Awesome . . . I knew you were like the last guy. You[']re an asshole."), this was consistent with her cover and ultimately did not influence Vickers' free will. As her supervisor testified, this was how Helmick was expected to respond as "an undercover officer posing as an adult interested in child exploitation." R. 56, Trial Tr. at 132, PID 703 ("It wouldn't really fit our undercover persona to say, 'Okay, no big deal. I'm a police officer.'"). And most importantly, even while expressing disappointment, Helmick repeatedly made clear that Vickers' decision to come to Ohio was entirely up to him. *See, e.g.,* R. 58-3, Google Chats at 85, PID 1070 ("If you come, you come . . . If you don[']t want to come, don[']t come. I[']m not forcing anyone to do something they don't want . . . ."); *id.* at 108, PID 1093 ("I don[']t] feel the need to have to reassure you in any way in order to get you to decide to come."). This is underscored by the fact that after Vickers cancelled plans to visit, he repeatedly re-initiated conversations with Traci and Katie, and his decision to drive to Ohio on January 5 was entirely unprompted.

We have repeatedly acknowledged that undercover operations targeting child pornographers—and even worse, child molesters—are "severely needed to prevent and deter" those who engage, often secretly, in these "serious crimes which can have devastating effects upon society and, most importantly, upon children who are sexually abused." *Moore*, 916 F.2d at 1139. There is nothing in the record to suggest that Helmick's actions were so fundamentally unfair or outrageous that they denied Vickers due process. This court has consistently refused to find "outrageous government conduct," *Al-Cholan*, 610 F.3d at 952, and we likewise decline to do so here. "In light of the 'moribund' state of this defense . . . the district court did not commit plain error in failing to raise it sua sponte." *Id.* (internal citation omitted).

### III

Next, Vickers asserts that his trial counsel was ineffective "in the formulation and presentation of his defense," particularly in failing to raise concerns about his mental health, Helmick's inexperience as an undercover agent, and the Task Force's lack of protocols. We decline to reach the merits of Vickers' ineffective assistance of counsel claims in this direct appeal. "As a general rule, a defendant may not raise ineffective assistance of counsel claims for the first time on direct appeal, since there has not been an opportunity to develop and include in the record evidence bearing on the merits of the allegations." *United States v. Williams*, 612 F.3d 500, 508 (6th Cir. 2010) (quoting *United States v. Wunder*, 919 F.2d 34, 37 (6th Cir. 1990)). Although an exception exists when the record is adequately developed, *id.*, that is not the case here where Vickers' claims "consist[] largely of unsubstantiated allegations." *See United States v. McCarty*, 628 F.3d 284, 296 (6th Cir. 2010).

The trial record is devoid of any evidence suggesting that the qualms Vickers raises were anything more than plausible, strategic decisions by his counsel. *United States v. Mullikin*, 460

F. App'x 526, 529 (6th Cir. 2012). Moreover, Vickers' claims that trial counsel failed to adequately cross-examine Helmick or call into question the Task Force's lack of protocols do not square with the record, which indicates counsel did both of those things. *See generally*, R. 56, Trial Tr. at 5–12, 55–57, 79–80, PID 576–83, 235–37, 259–60. To the extent Vickers alleges counsel's performance was deficient as to these matters—such that he should have probed deeper or asked different questions—the record does not demonstrate that counsel's performance was "outside the wide range of professionally competent assistance" he was constitutionally required to provide. *Strickland v. Washington*, 466 U.S. 668, 690 (1984). Thus, the burden will be on Vickers to supplement the record with evidence supporting his ineffective assistance claims should he choose to raise them in a 28 U.S.C. § 2255 motion, "the preferred mode for raising a claim of ineffective assistance of counsel." *United States v. Ferguson*, 669 F.3d 756, 762 (6th Cir. 2012) (internal quotation marks omitted).

**IV**

Lastly, Vickers challenges the substantive reasonableness of his sentence, and specifically, the life sentence he received on the enticement count. We review for an abuse of discretion. *United States v. Bistline*, 720 F.3d 631, 633 (6th Cir. 2013). We begin by noting that Vickers' sentence is within-guidelines and, accordingly, we afford it a presumption of reasonableness. *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc). A sentence imposed "must be proportionate to the seriousness of the circumstances of the offense and offender, and sufficient but not greater than necessary, to comply with the purposes of § 3553(a)." *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008) (internal quotation marks and citations omitted). Additionally, "[a] sentence is substantively unreasonable if the district court selects a sentence arbitrarily, bases the sentence upon impermissible factors, fails to

consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *Amawi*, 695 F.3d at 486 (internal quotation marks omitted).

Here, Vickers argues (1) that the life sentence imposed was "greater than necessary" because the government had previously indicated a willingness to accept a sentence of less than life during plea negotiations; and (2) that the district court placed too much weight on the § 3553(a) factor of deterrence given that Vickers was a first-time felon. Vickers cites no authority for his first theory. As the district court correctly recognized, there may be good reason why a sentence offered at the plea stage is less severe than one sought after a jury conviction. After all, that is the inherent nature of the bargaining process. A defendant who pleads guilty accepts some level of responsibility for his actions and saves the government the time and resources of litigating a case through trial. *See Brady v. United* States, 397 U.S. 742, 753 (1970). Furthermore, Vickers' decision to go to trial meant that the judge and jury were exposed firsthand to the sexually explicit text messages and pornographic videos Vickers sent. *See United States v. Kliebert*, 508 F. App'x 535, 546 (6th Cir. 2012) (affirming imposition of statutory maximum sentence and crediting the district court's conclusion that such a sentence was warranted given the "very, very troubling, disturbing, disgusting circumstances" surrounding defendant's crimes). Once Vickers rejected the plea and was found guilty by a jury of his peers, the court was under no obligation to honor the lapsed offer and was instead entitled to impose a higher, yet still within-guidelines, sentence.

As to Vickers' second objection, although he had no prior convictions, the record contained evidence that he had been engaging in illegal conduct for years. He had viewed and distributed child pornography and bestiality videos, claimed to have had inappropriate relations with at least one young girl, and was looking for more victims when Helmick encountered him

on Experience Project. Thus, given Vickers' predatory nature and propensity for engaging in illicit activities involving minors, it was reasonable for the district court to conclude that Vickers posed a "high risk to [] children," and as a result, to emphasize a strong need to protect society and prevent Vickers and others from ever engaging in such disturbing behaviors again. *See United States v. Hammonds*, 468 F. App'x 593, 599 (6th Cir. 2012) (affirming life sentence of similarly-situated defendant convicted of child pornography and enticement and acknowledging that the district court "appropriately and within its discretion, [found] that concerns about the seriousness of the crime and the need to protect the public were paramount"). Although Vickers may have preferred the court "performed this [§ 3553(a)] balancing differently" by giving less weight to deterrence, that, standing alone, is insufficient to show that his sentence was substantively unreasonable. *Id.* at 600. We decline to second-guess the district court and find that Vickers has not overcome the presumption of reasonableness we afford to his within-guidelines sentence.

Accordingly, Vickers' conviction and sentence are **AFFIRMED,** and we decline to reach the merits of his ineffective assistance of counsel claim in this direct appeal.