NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 18a0240n.06

CASE NO. 17-5602

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES of AMERICA, | ) | **FILED** |
| | ) | May 14, 2018 |
| *Plaintiff-Appellee*, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| WILLARD DEAN HALL, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF KENTUCKY |
| *Defendant-Appellant*. | ) | |
| | ) | |

**Before: NORRIS, BATCHELDER, and STRANCH, Circuit Judges.**

**ALICE M. BATCHELDER, Circuit Judge.** The defendant appeals the sentence resulting from his conviction for the production of child pornography. We AFFIRM.

**I.**

In March 2015, Willard Dean Hall—a 45-year-old man—created a Facebook profile of a fictional 15-year-old boy named "Jimmy Slone," which he used to coerce nude pictures from at least three minor female victims: FV-1, FV-2, and FV-3, ages 12, 16, and 13, respectively. Hall would identify a local girl on Facebook, contact her as "Slone," offer some flattery, and begin to request, badger, and beg her to send him nude pictures. He sent the girls pictures of "Slone's" penis, sent one victim a picture of her in a public place, as proof that he knew who she was, and sent pictures of guns with threats of self-harm when the victim refused to send nude pictures. When a victim would relent and send him a nude picture, Hall would use that picture to demand more pictures by threatening to post the first nude picture publicly. He also threatened to and did

send those nude pictures to other minors; specifically, he sent nude pictures of FV-1 to FV-3, to coax FV-3 and extort FV-1. He also sent nude pictures of FV-1 to FV-2's minor boyfriend, to persuade that boy to obtain or send back pictures of a certain 9-or-10-year-old girl. According to Hall, this boy had sent him nude pictures of several other minor females (younger than 14) but refused the request for pictures of the 9-or-10-year-old girl because she was too young.

When school officials learned that a "Jimmy Slone" was circulating nude pictures of FV-1 to students in their school, they contacted the police, who investigated, seized the "Jimmy Slone" Facebook account, and connected it to Hall. At Hall's residence, they found computers and equipment, 525 images (including the victims here), seven videos of child pornography, and the handguns in the threatening pictures he had sent to the victims. When questioned, Hall eventually admitted everything. The police arrested Hall and the federal grand jury indicted him on several counts, including Count 1 - Production of Child Pornography. Hall entered a guilty plea, pursuant to a plea agreement in which the prosecution dismissed all but Count 1.

The presentence report (PSR) calculated Hall's total offense level at 43, based on several enhancements and one reduction. The two enhancements pertinent to this appeal are:

> 38. Adjustment for Role in the Offense: The defendant used or attempted to use a person less than eighteen years of age to commit the offense or assist in avoiding detection of, or apprehension for, the offense; therefore, increase by two levels. USSG § 3B1.4.

PSR at 12-13.

> 61. Chapter Four Enhancement: The offense of conviction is a covered sex crime (i.e., the production of child pornography), neither USSG §§ 4B1.1 nor § 4B1.5(a) apply, and the defendant engaged in a pattern of activity involving prohibited sexual conduct, namely at least three instances of the production of child pornography given the respective conduct as to FV #1, FV #2, and FV #3. Therefore, the defendant is a repeat and dangerous sex offender against minors. Per § 4B1.5(b)(1), the offense level is determined as 5 plus the offense level determined under Chapters Two and Three.

2

PSR at 14. Hall's criminal history category was I, based on no prior crimes and zero points. The resulting range was life in prison, but the statutory maximum was 360 months. Following resolution of objections from both parties and a sentencing hearing, the district court considered the § 3553(a) factors and sentenced Hall to the within-guidelines sentence of 360 months.

**II.**

We review the district court's legal interpretations of the Guidelines de novo. *United States v. Morgan*, 687 F.3d 688, 693 (6th Cir. 2012). We review substantive reasonableness claims for abuse of discretion. *United States v. Jackson*, 877 F.3d 231, 236 (6th Cir. 2017).

**A.**

Hall contends that the 5-level "pattern of conduct" enhancement, U.S.S.G. § 4B1.5(b)(1), was improper. In calculating Hall's guideline range, the district court added five levels to Hall's offense-level tabulation, pursuant to § 4B1.5(b)(1), based on its finding that Hall had engaged in a pattern of activity comprising at least three separate instances of the production of child pornography, namely, FV-1, FV-2, and FV-3. Hall concedes the factual underpinning, *see* Apt. Br. at 8 ("Hall cannot dispute that there are two or more instances of prohibited sexual conduct"), but argues that § 4B1.5(b)(1) is inherently unreasonable "because it results in a guideline higher than would be achieved if Hall had a prior sex offense *conviction*," *id.* (emphasis added).

This assertion is untrue. If Hall had a prior sex offense *conviction*, such that the court would apply § 4B1.5(a) rather than § 4B1.5(b)(1), as Hall hypothesizes, the resulting advisory guideline range would be exactly the same, albeit on a different calculation. Moreover, even if Hall's assertion were true and the Sentencing Commission had decided to impose a more severe sentence on a "pattern of conduct" than on a "single prior conviction," Hall's disagreement with such a policy determination (e.g., according to Hall, "a prior sexual offense conviction[] is, presumably, something that would warrant a greater sentence than a 'pattern,'" Apt. Br. at 9)

3

would not render that decision necessarily unreasonable. More importantly, given that we have upheld the application of § 4B1.5(b)(1) on numerous similar occasions, *see United States v. Brattain*, 539 F.3d 445, 447-48 (2008); *United States v. Sibley*, 681 F. App'x 457, 461-62 (6th Cir. 2017); *United States v. Hammonds*, 468 F. App'x 593, 596-97 (6th Cir. 2012), we cannot agree with Hall's proposition that the provision itself is inherently unreasonable. In short, the district court properly applied it the same way to these circumstances. This claim fails.

**B.**

Hall contends that the 2-level "use of a minor" enhancement, U.S.S.G. § 3B1.4, was improper. In calculating Hall's guideline range, the district court added two levels to Hall's offense-level tabulation, pursuant to § 3B1.4, based on its finding that Hall used a minor to commit or further the crime, i.e., Hall used the nude pictures obtained from FV-1 to coax FV-3 and to barter with FV-2's minor boyfriend. The court also relied on *United States v. Broxmeyer*, 699 F.3d 265, 281 (2d Cir. 2012), in finding that § 3B1.4 applies to a scenario, as we have here, in which a minor photographs herself, i.e., acts as both photographer and subject.

Hall argues that the application of § 3B1.4 was improper because *Broxmeyer* applies only when a defendant uses one minor to photograph another minor. That is both factually incorrect, as *Broxmeyer*, 699 F.3d at 281, applies to a scenario such as we have here in which a minor photographs herself, and legally irrelevant, as the district court alternatively applied § 3B1.4 because Hall used the nude pictures obtained from FV-1 to coax FV-3 and to barter with FV-2's minor boyfriend. Thus, we need not decide whether the district court's reliance on *Broxmeyer* was appropriate. Hall has raised no legitimate claim of error on this issue. This claim fails.

**C.**

Hall raises three contentions that the within guidelines sentence is substantively unreasonable, because—he believes—it is greater than necessary to satisfy the § 3553(a) factors.

It is noteworthy that Hall does not contend that the district court acted arbitrarily or beyond its authority, or that it clearly erred on any factual findings or considered impermissible factors.

Hall's first contention is that the sentence was greater than necessary because his conduct was, in his opinion, "by no means the worst sort," Apt. Br. at 12, 16 (citing cases in which the sentences were 17 and 16 years, respectively, for conduct that Hall believes was worse than his own). Thus, Hall suggests some type of improper sentencing disparity based on these isolated cases. But such disparity is not necessarily improper. The guidelines sentencing system of calculations and factors is designed to create disparities based on the differences in individual cases and criminals. Disparities are problematic when they are "*national* disparities, not disparities between one individual's sentence and another individual's sentence." *United States v. Jenkins*, 528 F. App'x 483, 487 (6th Cir. 2013) (citation and quotation marks omitted).

Hall also contends that the court overemphasized the harm to the minor victims and the danger to the public, while ignoring his proffered mitigating factors, namely, his absence of prior criminal record, mental infirmity from a 2005 auto accident, and willingness to participate in treatment. Apt. Br. at 13. But a careful review of the sentencing transcript reveals that the court considered the § 3553(a) factors, as required, and produced a reasoned decision. Hall's disagreement with the court's subjective view of the factors is not a basis for reversal.

Finally, Hall contends that long prison sentences do not deter crime and are actually counterproductive, Apt Br. at 13, insisting that "it is the certainty of punishment rather than the length of the sentence that actually goes to deterrence," Apt. Reply Br. at 2. But Hall's argument is, at best, one perspective. That the district court was not persuaded does not support a claim of error. *See also United States v. Greer*, 872 F.3d 790, 799 (6th Cir. 2017) (rejecting the argument "that a shorter sentence would be a more effective deterrent than a longer sentence").

**III.**

For all of the foregoing reasons, we AFFIRM the judgment of the district court.